No. 13-2363

# In The United States Court Of Appeals
# For The Fourth Circuit

**Cristina Fernandez Cruz,**

*Plaintiff-Appellant,*

**v.**

**Nilda J. Maypa, Michelle Barba, a/k/a Michelle Maypa, and Ferdinand Barba,**

*Defendants-Appellees.*

**On Appeal from the United States District Court
for the Eastern District of Virginia
Alexandria Division**

**APPELLEES' BRIEF**

Timothy J. Battle
524 King Street
Alexandria, Virginia 22314
Telephone: (703) 836-1216
Email: tjbattle@verizon.net

Attorney for Defendants-Appellees

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, undersigned counsel states that:

Nilda J. Maypa, Michelle Barba, and Ferdinand Barba are all natural persons.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE

    I.    Statement Of The Relevant Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Procedural History.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT

    THE DISTRICT COURT CORRECTLY HELD THAT MS. CRUZ'S
    FOUR REMAINING CLAIMS ARE ALL BARRED BY THE
    APPLICABLE STATUTES OF LIMITATIONS. . . . . . . . . . . . . . . . . . . . . 7

    A.    Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    The District Court Correctly Ruled That Ms. Cruz's Claims
        Under The TVPA Are Barred Under The Applicable Four-
        Year Statute Of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    The District Court Correctly Concluded That Ms. Cruz's
        Claim Under The FLSA Is Barred Under A Three-Year
        Statute Of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    D.    The District Court Correctly Ruled That Ms. Cruz's Time-
        Barred TVPA And FLSA Claims Are Not Saved Under
        The Doctrine Of Equitable Tolling. . . . . . . . . . . . . . . . . . . . . . 17

    E.    The District Court Correctly Held That Ms. Cruz's Breach-
        Of-Contract Claim Is Barred Under The Applicable Five-
        Year Statute Of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF CONTENTS (CONT'D)

**Page**

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases** **Page**

*Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Angles v. Dollar Tree Stores*, 494 F. App'x 326 (4th Cir.
2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Archer v. Sullivan County, Tenn.*, 129 F.3d 1263, 1997 WL 720406
(6th Cir. 1997) (unpublished table disposition). . . . . . . . . . . . . . . . . . . . . . 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Baldwin v. City of Greensboro*, 714 F.3d 828 (4th Cir.
2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 13, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . 7, 17

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988). . . . . . . . . . . . . . . . . 10, 13

*Camayo v. John Peroulis & Sons Sheep, Inc.*, No. 10-cv-
00772, 2013 WL 3927677 (D. Colo. July 30, 2013). . . . . . . . . . . . . . . . . . 14

*Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2010 WL
3219501 (N.D. Cal. Aug. 13, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

*Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 CIV. 3725
DC, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010). . . . . . . . . . . . . . . . . 25, 28

*Chao v. Va. Dep't of Transp.*, 157 F. Supp. 2d 681 (E.D. Va.
2001), *aff'd in part & rev'd in part on other grounds*,
291 F.3d 276 (4th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18, 28

*Cioca v. Rumsfeld*, 720 F.3d 505 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . 7

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253
(S.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES (CONT'D)

**Cases**                                                          **Page**

*Cortez v. Medina's Landscaping*, No. 00 C 6320, 2002 WL
    31175471 (N.D. Ill. Sept. 30, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Creek Coal Co. v. Bates*, 134 F.3d 734 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . 11

*Dean v. Pilgrim Pride's Corp.*, 395 F.3d 471 (4th Cir. 2005). . . . . . . . . . . . . . . . . 7

*Deressa v. Gobena*, No. 1:05CV1334(JCC), 2006 WL 335629
    (E.D. Va. Feb. 13, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32, 33, 34

*Doe v. Siddig*, 810 F. Supp. 2d 127 (D.D.C. 2011). . . . . . . . . . . . . . . . . 20, 21, 30

*Enter. Mortg. Acceptance Co., Sec. Litig. v. Enter. Mortg.
    Acceptance Co.*, 391 F.3d 401 (2d Cir. 2004). . . . . . . . . . . . . . . . 11, 12, 14

*Gordon v. Pete's Auto Serv. of Denbigh*, 637 F.3d 454
    (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76 (E.D.N.Y.
    2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Headley v. Church of Scientology Int'l*, No. CV 09-3986 DSF,
    2009 U.S. Dist. LEXIS 131766 (C.D. Cal. Aug. 12, 2009). . . . . . . . . . . . . 14

*Hernandez v. Attisha*, No. 09-CV-2257-IEG (WMC), 2010 WL
    816160 (S.D. Cal. Mar. 5, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 30

*Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S.
    939 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hunter v. Custom Bus. Graphics*, 634 F. Supp. 2d 420 (E.D. Va.
    2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Informatics Applications Group, Inc. v. Shkolnikov*, 836 F. Supp.
    2d 400 (E.D. Va. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES (CONT'D)

**Cases**                                                                              **Page**

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). . . . . . . . . . . . . . . . . . . . . . 28

*Jaffe-Spindler Co. v. Genesco, Inc.*, 747 F.2d 253 (4th Cir.
    1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012). . . . . . . . . . 19, 30, 32 34

*Lai v. Leung*, No. CV 11-3561 SJ MDG, 2012 WL 4472155
    (E.D.N.Y. Aug. 31, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). . . . . . . . . . . . . . .  10, 11, 12, 13

*Latham v. Albuquerque Pub. Schs. Bd. of Educ.*, 489 F. App'x
    239 (10th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Leon v. Pelleh Poultry Corp.*, No. 10 CIV. 4719 GAY, 2011
    WL 4888861 (S.D.N.Y. Oct. 13, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lewis v. Gupta*, 54 F. Supp. 2d 611 (E.D. Va. 1999). . . . . . . . . . . . . . . . . . . . . . 14

*Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936 (D.C. Cir.
    2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mylan Pharm., Inc. v. U.S. Food & Drug Admin.*, 454 F.3d
    270 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Noble v. Serco, Inc.*, No. Civ. A. 3:08-76-DCR, 2009 WL
    3254143 (E.D. Ky. Oct. 7, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Olatunji v. Ashcroft*, 387 F.3d 383 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . 11

*Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176 (4th Cir.
    2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES (CONT'D)

**Cases**                                                                **Page**

*Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168 (S.D. Fla.
   2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (en banc). . . . . . . . . . . . . . . . . . . 8, 18

*Shipman v. Kruck*, 267 Va. 495, 593 S.E.2d 319 (2004). . . . . . . . . . . . . . . . . . 30

*Vance v. Whirlpool Corp.*, 716 F.2d 1010 (4th Cir. 1983),
   *cert. denied*, 465 U.S. 1102 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-CV-0049-
   DFHTAB, 2006 WL 2850020 (S.D. Ind. Sept. 29, 2006). . . . . . . . . . . . . . 26

*Viciedo v. New Horizons Computer Learning Ctr. of Columbus,
   Ltd.*, 246 F. Supp. 2d 886 (S.D. Ohio 2003). . . . . . . . . . . . . . . . . . . . . . . . 26


**Statutes**

18 U.S.C. § 1589. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

18 U.S.C. § 1590. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 15

18 U.S.C. § 1595 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 9, 10 passim

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1658. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 C.F.R. § 516.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

# TABLE OF AUTHORITIES (CONT'D)

**Statutes**                                                                    **Page**

29 U.S.C. § 206. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 216. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

29 U.S.C. § 255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 23

Va. Code Ann. § 8.01-229. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 34

Va. Code Ann. § 8.01-230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 30

Va. Code Ann. § 8.01-246. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239,
    92 Stat. 95 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Trafficking Victims Protection Reauthorization Act of 2003,
    Pub. L. No. 108-193, 117 Stat. 2875 (2003). . . . . . . . . . . . . . . . . . . . . . . 8

William Wilberforce Trafficking Victims Protection Reauthorization
    Act of 2008, Pub. L. No. 110-457, 122 Stat.
    5044 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 12 passim


**Other**

United States Department of Labor: Wage and Hour Division:
    Fair Labor Standards Act (FLSA) Minimum Wage Poster,
    http://www.dol.gov/whd/regs/compliance/posters/flsa.htm (last
    visited Jan. 14, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States Department of Labor: Wage and Hour Division:
    Minimum Wage, http://www.dol.gov/whd/minimumwage.htm
    (last visited Jan. 14, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# JURISDICTIONAL STATEMENT

The district court's subject-matter jurisdiction was based on 28 U.S.C. §§ 1331 and 1367 as Plaintiff-Appellant Cristina Fernandez Cruz asserted claims under the laws of the United States and related claims under Virginia state law against Defendants-Appellees Nilda J. Maypa ("Mrs. Maypa"), Michelle Barba, and Ferdinand Barba. (JA 8.) The district court entered final judgment against Ms. Cruz as to all of her claims against all of the Defendants on October 4, 2013. (JA 115.) As such, this Court has jurisdiction of this appeal under 28 U.S.C. § 1291. Ms. Cruz timely filed her Notice of Appeal on November 1, 2013. (JA 116.)

# STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Where Ms. Cruz purportedly "escaped" from the Defendants on January 17, 2008, with the assistance of a friend and another person, but nevertheless waited five and one-half years until July 16, 2013 to commence this action, did the district court correctly rule that all of Ms. Cruz's claims are barred by the applicable statutes of limitations?

## STATEMENT OF THE CASE

### I.    Statement Of The Relevant Facts

Because Ms. Cruz's action was dismissed upon the Defendants' motion to dismiss, the following factual allegations in her First Amended Complaint are accepted as true for purposes of this appeal:  Sometime in 2001, Ms. Cruz spoke to Mrs. Maypa about moving from the Philippines to the United States to work as a domestic servant for Mrs. Maypa and her daughter and son-in-law, Mr. and Mrs. Barba.  (JA 8-10.)  On December 14, 2001, Mrs. Maypa signed a contract with Ms. Cruz and faxed it to her.  (JA 10, 33-35.)  The contract provided for a two-year term, commencing on February 1, 2002 and expiring on January 31, 2004.  (JA 35.)  Under the terms of the contract, Ms. Cruz was to work 40 hours per week, with a full day off on Sunday, and be paid at the rate of $6.50 per hour for all working hours, not including overtime pay.  (JA 10, 26, 33.)  The contract further provided that Ms. Cruz's passport, and other personal property, would not be "withheld by the Employer for any reason." (JA 34.)  Ms. Cruz signed the contract on January 17, 2002, after her family and neighbors had "translated the document and explained its terms" to her.  (JA 10, 11, 35.)

Ms. Cruz, who was 29 years old at that time, traveled to the United States in March 2002 to commence her employment by Mrs. Maypa.  (JA 5, 12.)  "Just hours after arriving in the United States and reaching Defendants' home," Ms. Cruz

surrendered her passport to Mrs. Maypa and never regained possession of it, despite repeated requests for its return and "efforts to locate it before escaping from Defendants." (JA 12-13.) In addition, "[s]hortly after arriving in the United States, Ms. Cruz learned that her working and living conditions had been drastically misrepresented. Ms. Maypa's actions made clear that she did not intend to follow the original contract terms." (JA 14.)

Ms. Cruz signed two additional contracts to continue working for the Defendants. (JA 14-15, 36-45.) On January 3, 2004, Ms. Cruz signed the first contract extension, which was to have a 15-month term, commencing on January 1, 2004 and expiring on March 31, 2005. (JA 14-15, 37.) The first extension called for shorter hours (35 per week) and increased pay ($6.72 per hour for all working hours, not including overtime). (JA 15, 36.) On February 22, 2005, Ms. Cruz signed the second extension, which called for a three-year term, commencing on March 1, 2005 and expiring on February 28, 2008, with the same hours and pay. (JA 15, 39-40, 45.)

As with the first contract, Mrs. Maypa "never honored the provisions in either contract" extension. (JA 45; *see also id.* (Mrs. Maypa "did not abide by their terms either").) Instead, the Defendants "demanded that Ms. Cruz engage in labor well beyond the scope of anything discussed prior to her employment or in her contracts," while paying her "a pittance for her endless hours of hard labor," and far less than what was promised in the contracts. (JA 15, 17.)

In late 2007, Ms. Cruz "began thinking about running away" because of "the fear of being stuck with Defendants living in these conditions for the rest of her life." (JA 22.)  Accordingly, Ms. Cruz made contact with a friend "living in the United States who gave her the contact information for someone who could help her escape." (JA 22.)  Ms. Cruz gathered all of the papers she could find relating to her employment and immigration status and, on the "pre-arranged day" of January 17, 2008, made her "escape" from the Defendants in a van that picked Ms. Cruz up from the Barbas' house.  (JA 22.)

## II.    Procedural History

Ms. Cruz then waited five and one-half years to commence this action by the filing of her original Complaint on July 16, 2013, followed closely by her First Amended Complaint filed on July 23, 2013.  (JA 1-2, 4.)  Ms. Cruz asserted claims against all of the Defendants for violations of the Victims of Trafficking and Violence Protection Act of 2000 (the "TVPA"), 18 U.S.C. §§ 1589, 1590, and 1595 (JA 23-25); failure to pay federal minimum wage in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 206, 216 (JA 25-26); and false imprisonment under state law

(JA 29-30). Ms. Cruz also asserted claims against Mrs. Maypa alone for breach of contract and fraudulent misrepresentation under state law. (JA 26-28.)[1]

On August 29, 2013, the Defendants moved to dismiss all of Ms. Cruz's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (JA 46.) The district court held a hearing on the Defendants' motion on September 13, 2013. (JA 88-104.) On October 4, 2013, the district court granted the motion to dismiss in its entirety, concluding that all of Ms. Cruz's claims are barred by the applicable statutes of limitations and that Ms. Cruz's failure to timely file her claims is not excused under the doctrine of equitable tolling. (JA 106-115.) Ms. Cruz has appealed the district court's decision as to the federal claims against all of the Defendants and the breach-of-contract claim against Mrs. Maypa, but has elected not to pursue an appeal as to her claims for fraudulent misrepresentation and false imprisonment, which are no longer part of this case. (Appellant's Br. (Doc. 14) 12 n.3.)

## SUMMARY OF THE ARGUMENT

Ms. Cruz's claims under the TVPA, the FLSA, and for breach of contract under state law are subject to statutes of limitations of four, three, and five years,

---

[1]Ms. Cruz also included in her First Amended Complaint a Count VII, which was not really a separate claim but merely a request for "Punitive Damages/Special Damages" based on the conduct alleged in support of the first six counts. (JA 30.)

respectively. All such claims by Ms. Cruz accrued, at the very latest, on January 17, 2008, the date of her alleged "escape" from the Defendants. But Ms. Cruz waited until July 16, 2013, about five and one-half years after her "escape," to commence this action. As such, the district court correctly ruled that all of her claims are time-barred.

Ms. Cruz seeks to avoid the bar of the statute of limitations as to her TVPA claims by arguing that they are subject to the 10-year statute of limitations currently found in the TVPA. However, the act amending the TVPA to extend the statute of limitations from 4 to 10 years included an express effective date of June 21, 2009 (180 days after the statute's enactment), which was long after Ms. Cruz's claims against the Defendants had already accrued. As such, the extended limitations period does not apply retroactively to Ms. Cruz's claims.

Ms. Cruz also argues that her remaining federal and state claims are all saved by some form of the doctrine of equitable tolling. But even assuming that the doctrine is applicable here, such tolling would have ended no later than the date of Ms. Cruz's "escape" from the Defendants. Since her "escape" occurred on January 17, 2008, five and one-half years before Ms. Cruz commenced this action, the district court did not abuse its discretion in denying her equitable tolling argument and properly dismissed all of her claims with prejudice.

## ARGUMENT

## THE DISTRICT COURT CORRECTLY HELD THAT MS. CRUZ'S FOUR REMAINING CLAIMS ARE ALL BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

### A.    Standard Of Review.

With one exception, the district court's decision granting the Defendants' motion to dismiss is reviewable de novo by this Court. *E.g.*, *Cioca v. Rumsfeld*, 720 F.3d 505, 508 (4th Cir. 2013). To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, factual allegations are assumed to be true, but must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On the other hand, courts are not bound to accept as true legal conclusions couched as factual allegations. *Id.* A motion to dismiss may raise a statute of limitations defense "if the time bar is apparent on the face of the complaint," *see Dean v. Pilgrim Pride's Corp.*, 395 F.3d 471, 474 (4th Cir. 2005), as the district court determined to be the case here (JA 109).

The one exception to the de novo standard of review concerns the district court's ruling that Ms. Cruz is not entitled to claim the benefit of the doctrine of

equitable tolling, which is reviewed only for an abuse of discretion by the district court. *See, e.g.*, *Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013); *Rouse v. Lee*, 339 F.3d 238, 247 n.6 (4th Cir. 2003) (en banc).

**B.     The District Court Correctly Ruled That Ms. Cruz's Claims Under The TVPA Are Barred Under The Applicable Four-Year Statute Of Limitations.**

Ms. Cruz alleged that the Defendants violated 18 U.S.C. §§ 1589 and 1590 of the TVPA, thus providing her with a civil remedy under 18 U.S.C. § 1595. (JA 23-25.)  As currently enacted, § 1595 provides that "[a]n individual who is a victim of a violation [of the TVPA] may bring a civil action against the perpetrator . . . in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).  The civil action was only added to the TVPA in 2003 by the Trafficking Victims Protection Reauthorization Act of 2003 (the "2003 Act"), Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003). The 2003 Act did not, however, provide a statute of limitations for the civil action added in § 1595(a).  As such, prior to June 21, 2009, a civil action under § 1595 was subject to a four-year statute of limitations under the federal catchall limitations period. *See* 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause

8

of actions accrues.").

That changed only when Congress amended § 1595 to add a 10-year statute of limitations. *See* 18 U.S.C. § 1595(c) ("No action may be maintained under this section unless it is commenced not later than 10 years after the cause of action arose."); William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "2008 Act"), Pub. L. No. 110-457, § 221(2)(B), 122 Stat. 5044, 5067 (2008). However, the legislation amending the TVPA to add the longer limitations period did not take effect until June 21, 2009, which was "180 days after the date of the enactment of" the 2008 Act, which occurred on December 23, 2008. *See* 2008 Act, Pub. L. No. 110-457, § 407, 122 Stat. at 5090. Because Ms. Cruz's causes of action accrued no later than January 17, 2008, the date of her "escape" from the Barbas' house,[2] her TVPA claims are time-barred unless the amendment in the 2008

---

[2]Ms. Cruz mistakenly asserts that for each of her claims, the Defendants "conceded" that the applicable limitations period began to run on the date Ms. Cruz "escaped." (Appellant's Br. 12 (citing JA 52, 54, 56).) In fact, however, the Defendants plainly argued in the district court that Ms. Cruz's claims under the TVPA and the FLSA accrued "no later" than January 17, 2008. (JA 52, 54; *see also id.* 53 (arguing that any of Ms. Cruz's claims that arose more than four years before the effective date of the 2008 Act "would be time-barred no matter what").) With regard to Ms. Cruz's breach-of-contract claim, the Defendants clearly argued that the causes of action as to each of the three separate contracts accrued under Virginia law when they were breached, *see* Va. Code Ann. § 8.01-230, which in each instance was "shortly after Ms. Cruz commenced performance, which was March 2002 for the first contract, January 2004 for the second contract, and February 2005 for the third contract" (JA 56). In rendering its decision, the district court likewise assumed that "Ms. Cruz's causes of action accrued *no later* than January 17, 2008, the date on which she escaped from Defendants' home." (JA 111 (emphasis added).) This

Act adding the 10-year statute of limitations to § 1595 applies retroactively.

"First and foremost, 'retroactivity is not favored in the law.'" *Baldwin*, 714 F.3d at 835 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994)).  This principle gives rise to a "time-honored presumption [against retroactivity] unless Congress has clearly manifested its intent to the contrary." *Id.* (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997) (Court's alteration)); *see also Landgraf*, 511 U.S. at 264 ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)).

This Court has "traditionally applied a three-step analysis in determining whether the presumption against retroactivity should apply" in a particular case. *Baldwin*, 714 F.3d at 836.  First, the Court asks "whether Congress has expressly prescribed the statute's proper reach." *Gordon v. Pete's Auto Serv. of Denbigh*, 637 F.3d 454, 458 (4th Cir. 2011) (quoting *Landgraf*, 511 U.S. at 280).  "If Congress has done so, of course, there is no need to resort to judicial default rules." *Landgraf*, 511 U.S. at 280; *see also Altizer v. Deeds*, 191 F.3d 540, 545 (4th Cir. 1999) ("If it has, the Court must respect the stated will of Congress.").  In that event, "the inquiry ends,

---

language directly contradicts Ms. Cruz's misstatement that the district court "correctly assumed [that] all of Ms. Cruz's TVPA claims accrued *no earlier* than January 17, 2008, the date of her escape."  (Appellant's Br. 27 (emphasis added).)

and the court enforces the statute as written," such that there is no need to proceed to the second and third steps of the *Landgraf* analysis.  *Enter. Mortg. Acceptance Co., Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 406 (2d Cir. 2004).

> For example, where, as in the 2008 Act, Congress has expressly
>
> prescribed a specific effective date for the statutory amendment at issue, [the court] need proceed no further with any retroactivity analysis.  *See Landgraf*, 511 U.S. at 280 ("the court's first take is to determine whether Congress has expressly prescribed the statute's proper reach.   If Congress has done so, of course, there is no need to resort to judicial default rules.").   The absence of any retroactive intent on the part of Congress ends our inquiry.

*Creek Coal Co. v. Bates*, 134 F.3d 734, 738 (6th Cir. 1997).[3]  Conversely,

> *in instances where the statute does not contain an express effective date*, the court must [then proceed to the second step of the analysis and] determine whether the statute would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."

*Altizer*, 191 F.3d at 545 (emphasis added) (quoting *Landgraf*, 511 U.S. at 280);[4] *see also Olatunji v. Ashcroft*, 387 F.3d 383, 389 & n.3 (4th Cir. 2004) (proceeding to the

---

[3] The statutory amendment at issue in that case provided, similar to the 2008 Act, that "[t]he provisions of this Act shall take effect on the date of the enactment of this Act."  Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, § 20(a), 92 Stat. 95, 106 (1978), *cited in Creek Coal*, 134 F.3d at 737.

[4] While the effect is "particularly prevalent in the context of claims that have already expired," there is no question that "[e]xtending the statute of limitations retroactively 'increase[s] [a defendant's] liability for past conduct,' *Landgraf,* 511 U.S. at 280, by increasing the period of time during which a defendant can be sued," even in cases where the claims had not expired at the time the limitations period was extended.  *Enter. Mortg. Acceptance Co.*, 391 F.3d at 410 (court's alterations).

second step of the *Landgraf* test based on the Government's concession that the relevant portions of the statute in question did not contain an "effective date" provision). Thus, the court in *Altizer* "proceed[ed] to the second step in the *Landgraf* analysis" only after "first not[ing] that Congress failed to specify an effective date" for the statute at issue in that case. 191 F.3d at 545.

Here, by contrast, the 2008 Act specifically provided that "[t]his title, and *the amendments made by this title*, shall take effect 180 days after the date of the enactment of this Act." 2008 Act, Pub. L. No. 110-457, § 407, 122 Stat. at 5090 (emphasis added). One of "the amendments made by this title" was the amendment adding § 1595(c) to extend the statute of limitations for asserting a civil action under § 1595(a) to 10 years. *Id.*, § 221(2)(B), 122 Stat. at 5067. At Congress's express direction, that amendment did not take effect until June 21, 2009, which was 180 days after the December 23, 2008 enactment of the 2008 Act, or more than 17 months after the latest day (January 17, 2008) on which Ms. Cruz's TVPA claims could have accrued. Accordingly, the 2008 amendments do not apply retroactively to Ms. Cruz's claims, and the district court correctly held that those claims were subject to a four-year statute of limitations without regard to the second and third steps of the *Landgraf* analysis. (JA 111);[5] *cf. Latham v. Albuquerque Pub. Schs. Bd. of Educ.*, 489 F. App'x

---

[5]Ms. Cruz confusingly asserts that the district court supposedly erred both "when it skipped to the end of the *Landgraf* analysis" and in "not consider[ing] the retroactivity framework established by the Supreme Court in *Landgraf*" at all.

239, 245 (10th Cir. 2012) ("'[W]hen the Congress has delayed the effective date of a substantive statute that could in principle be applied to conduct completed before its enactment,' the federal courts 'presume the statute applies only prospectively.'" (quoting *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 940 (D.C. Cir. 2009))).

Ms. Cruz seeks to bolster her position by noting that "every court" facing this issue—other than the district court, of course—has applied the 10-year limitations period to unexpired claims. (Appellant's Br. 25.) But Ms. Cruz cites only two other decisions on this issue, by district courts in other circuits, and it appears that these are the only three cases that have addressed the issue. Obviously, none of the decisions in binding on this Court, which is presented with the issue as a matter of first impression at the appellate level.

Moreover, neither of the cases relied on by Ms. Cruz addresses the dispositive point concerning the effective date of the 2008 Act. In fact, one of the cases not only gave the wrong effective date for the 2008 Act, incorrectly stating that the 2008 Act took effect on December 23, 2008, but then went on to support its decision by noting

_____

(Appellant's Br. 17, 18). The latter claim is plainly incorrect as the district court actually cited *Landgraf*, *Bowen*, and other retroactivity cases, including this Court's opinion in *Baldwin*, in deciding that Ms. Cruz could not claim the benefit of the extended 10-year statute of limitations. (JA 110.) As to the former argument, the district court properly examined the language of the 2008 Act as the first part of its retroactivity analysis. (JA 111 (noting that the 10-year statute of limitations did not take effect until 180 days after the date of the enactment of the 2008 Act).) As noted, no further analysis was required based on Congress's express prescription of an effective date for the amendments made by the 2008 Act.

that "the legislative history of the § 1595(c) amendment extending the limitations period from four years to ten years is silent as to the issue of retroactivity." *Headley v. Church of Scientology Int'l*, No. CV 09-3986 DSF, 2009 U.S. Dist. LEXIS 131766, at *20 (C.D. Cal. Aug. 12, 2009). The *Headley* court's resort to legislative history was plainly improper when the 2008 Act itself addressed the issue of retroactivity by including an "express effective date." *See, e.g.*, *Mylan Pharm., Inc. v. U.S. Food & Drug Admin.*, 454 F.3d 270, 275 (4th Cir. 2006) (faced with a "straightforward statutory command, there is no reason to resort to legislative history" (internal quotation marks omitted)). The persuasive value of the other case cited by Ms. Cruz, *Camayo v. John Peroulis & Sons Sheep, Inc.*, No. 10-cv-00772, 2013 WL 3927677 (D. Colo. July 30, 2013), is also questionable as it relies on a procedural/substantive dichotomy that is not controlling in the context of an enactment amending a statute of limitations. *See, e.g.*, *Enter. Mortg. Acceptance Co.*, 391 F.3d at 409 ("[I]n different contexts, a statute of limitations may fairly be described as either procedural or substantive."); *id.* at 409 n.6 (collecting authorities); *Lewis v. Gupta*, 54 F. Supp. 2d 611, 617 (E.D. Va. 1999) ("Statutory amendments affecting statutes of limitation generally affect substantive, rather than procedural, rights, and such substantive rights are typically protected from retroactive application of laws.").

Finally, even if it is determined that the amendment increasing the statute of limitations from 4 to 10 years affected only "procedural" rights, Ms. Cruz would still

be prohibited from bringing suit as to any claims that were time-barred under the four-year limitations period before § 1595 was amended by the 2008 Act. *See, e.g.*, *Baldwin*, 714 F.3d at 837 (courts generally do not extend statutes of limitation to revive claims that are otherwise barred). Thus, any claims arising before June 21, 2005—that is, more than four years before the June 21, 2009 effective date of the 2008 Act—would be time-barred no matter what. This would clearly include such claims as that the Defendants in 2002 knowingly recruited, transported, or obtained Ms. Cruz for labor or services in violation of § 1590 of the Act. 18 U.S.C. § 1590(a).[6]

In sum, Ms. Cruz's TVPA claims are subject to a four-year statute of limitations that accrued no later than January 17, 2008, the date of her "escape" from the Defendants. Because she waited five and one-half years after her "escape" to commence this action, the district court correctly ruled that her claims under the TVPA are time-barred.

---

[6]Ms. Cruz can avoid this result only if the limitations period as to her TVPA claims was equitably tolled, an argument that is dealt with below. While Ms. Cruz also contends that none of her claims based on conduct that occurred before June 21, 2005 are time-barred based on the Defendants' "continuing violation" of the TVPA (Appellant's Br. 29-30), the Defendants' "recruit[ing]," "transport[ing]," and "obtain[ing]" Ms. Cruz for labor or services were obviously one-time events that occurred long before June 21, 2005, 18 U.S.C. § 1590(a).

**C.    The District Court Correctly Concluded That Ms. Cruz's Claim Under The FLSA Is Barred Under A Three-Year Statute Of Limitations.**

Ms. Cruz also asserted a claim for relief under 29 U.S.C. § 216(b), by which she sought to recover her unpaid minimum wages since her arrival in the United States, an equal amount as liquidated damages, and attorney's fees based on the Defendants' willful violation of the FLSA.  "The statute of limitations under the FLSA for unpaid minimum wages, unpaid overtime compensation, and liquidated damages is set out in 29 U.S.C. § 255."  *Chao v. Va. Dep't of Transp.*, 157 F. Supp. 2d 681, 695 (E.D. Va. 2001), *aff'd in part & rev'd in part on other grounds*, 291 F.3d 276 (4th Cir. 2002).  Section 255 provides that

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey Act, or the Bacon-Davis Act—
>
> (a)    if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]

29 U.S.C. § 255(a).

Because Ms. Cruz claims a willful violation (JA 25-26), the statute of limitations for her FLSA claim is arguably three years.[7]   But her cause of action accrued no later than January 17, 2008, the date of her "escape," after which she no longer worked for the Defendants and earned no further wages.  *See Chao*, 291 F.3d at 283.  Because Ms. Cruz waited five and one-half years to bring this action, the district court correctly held that her claim under the FLSA is barred by the three-year statute of limitations.

### D.   The District Court Correctly Ruled That Ms. Cruz's Time-Barred TVPA And FLSA Claims Are Not Saved Under The Doctrine Of Equitable Tolling.

Having waited too long to commence this action, Ms. Cruz seeks to claim the benefit of the doctrine of equitable tolling as to her federal claims under the TVPA and the FLSA.  The issue of equitable tolling was briefed and argued below.  (JA 54-

---

[7]Ms. Cruz's claim that the Defendants willfully violated the FLSA rests entirely on the following allegation: "Defendants' failure to pay Ms. Cruz the required wage was willful.  Defendants acted knowingly, willfully, or with reckless disregard that their conduct was prohibited as evidenced by Ms. Maypa submitting a fraudulent contract to obtain a visa for Ms. Cruz to enter into the United States."  (JA 25-26.) These sorts of legal conclusions couched as factual allegations are not entitled to the assumption of truth on a motion to dismiss.  *See Twombly*, 550 U.S. at 555. Moreover, it is unclear from Ms. Cruz's complaint what connection there is between the supposedly "fraudulent contract" and the Defendant's failure to pay Ms. Cruz the required wages under the FLSA.  As such, it is doubtful that Ms. Cruz has adequately pleaded that the Defendants willfully violated the FLSA.  The statute of limitations for a FLSA violation that is not willful is two years.  *See* 29 U.S.C. § 255(a).

17

55, 72-78, 96, 99-100.)  While Ms. Cruz accuses the district court of having "failed

to consider" her equitable tolling argument (Appellant's Br. 31), the court specifically

rejected her argument in that regard (JA112).  As such, the district court's decision

denying equitable tolling is reviewed only for an abuse of discretion.  *See, e.g.*,

*Angles v. Dollar Tree Stores*, 494 F. App'x 326, 332 (4th Cir. 2012); *Rouse*, 339 F.3d

at 247 n.6.  No such abuse of the district court's discretion occurred here.

This Court has emphasized the extremely limited circumstances under which

the doctrine of equitable tolling will be applied to a federal claim:

> "[A]ny invocation of equity to relieve the strict application of a
> statute of limitations must be guarded and infrequent, lest circumstances
> of individualized hardship supplant the rules of clearly drafted statutes."
> *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *Spencer v.
> Sutton*, 239 F.3d 626, 629 (4th Cir. 2001). The circumstances under
> which equitable tolling has been permitted are therefore quite narrow.
> Equitable tolling has been allowed "in situations where the claimant has
> actively pursued his judicial remedies by filing a defective pleading
> during the statutory period, or where the complainant has been induced
> or tricked by his adversary's misconduct into allowing the filing deadline
> to pass." *Irwin v. Dept. of Veterans*, 498 U.S. 89, 96 (1990).  We have
> also recognized that equitable tolling is appropriate when "extraordinary
> circumstances beyond plaintiffs' control made it impossible to file the
> claims on time." *Harris*, 209 F.3d at 330 (quoting *Alvarez-Machain v.
> United States*, 107 F.3d 696, 700 (9th Cir. 1996)). Equitable tolling is
> not appropriate, however, "where the claimant failed to exercise due
> diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.

*Chao*, 291 F.3d at 283.  Thus, Ms. Cruz "is entitled to equitable tolling only if she

acted diligently to protect her rights, but was prevented from filing a timely claim due

to extraordinary circumstances beyond her control." *Id.*; *see also id.* ("The question

is whether the delinquent *plaintiff* has done everything *she* can to preserve her rights." (emphasis added)).  In this instance, the district court correctly denied equitable tolling because Ms. Cruz "failed to plead sufficient facts to show the extraordinary circumstances required for the doctrine of equitable tolling to be applied." (JA 112.)

Ms. Cruz argues to the contrary that such extraordinary circumstances are present here because she was a victim of human trafficking.  Seeking to explain the delay of more than half a decade between her "escape" and filing suit in this case, Ms. Cruz asserts that, "[c]onsistent with the understanding of the traumatic effects of trafficking on its victims, courts have repeatedly tolled statutes of limitations for victims' claims *long past the date of their escape*." (Appellant's Br. 33 (emphasis added).)  However, none of the cases relied on by Ms. Cruz actually supports that proposition.

For example, Ms. Cruz states that in *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012), "the court held that a trafficking victim's federal claim did not begin to run *until she made contact with law enforcement*." (Appellant's Br. 33 (Ms. Cruz's emphasis).)  By her emphasis, Ms. Cruz suggests that claims under the TVPA or the FLSA should be tolled until a trafficking victim makes contact with law enforcement, presumably sometime after escaping.  But in *Kiwanuka*, the victim worked for her employers through August 1, 2009, which was *after* the Federal Bureau of Investigation had already launched an investigation, with the victim's help,

in July 2009 into the circumstances of her employment. 844 F. Supp. 2d at 111, 117. Thus, the court found that the plaintiff had made an adequate showing that the statute of limitations was equitably tolled and "did not begin to run until July 2009, when Ms. Kiwanuka's first contact and cooperation with the FBI took place," which was *before* she even stopped working for the defendants. *Id.* at 118. Accordingly, Ms. Kiwanuka's complaint, which was filed in August 2010, only a year after she stopped working for the defendants, was timely filed. *Id.*

Another case cited by Ms. Cruz, *Doe v. Siddig*, 810 F. Supp. 2d 127 (D.D.C. 2011), similarly provides no support for her assertion that claims under the TVPA and the FLSA are subject to equitable tolling "long past" the date of the victims' escape. In that case, the plaintiff asserted a variety of claims, including violations of the TVPA and the FLSA, in connection with her employment in Virginia by the defendants as a domestic servant, which ended with her alleged "escape" on August 7, 2009. *Id.* at 131. Unlike Ms. Cruz in this case, the plaintiff in *Siddig*, who was brought to the United States in 1990 when she was just 14 years old, commenced her action less than a year after her alleged "escape," on July 26, 2010. *Id.* The plaintiff conceded that at least some of her claims would be barred if the statutes of limitations were strictly applied, but argued that the limitations periods "should be equitably tolled until July 26, 2008, when she was first permitted to travel outside Virginia alone," or, alternatively, "until 2006, when she first left Defendants' household

20

without supervision." *Id.* at 133 & n.8.  Because the defendants "failed to respond to Doe's equitable tolling argument altogether," the court had "no occasion to resolve which of these dates would be more appropriate for tolling purposes," but determined that it would be prudent to take some discovery on the issue. *Id.* at 133-34 & n.8.  In either case, however, the equitable tolling was to have ended *before* the date of the plaintiff's "escape," even though the plaintiff was forced to suffer labor conditions similar to those alleged by Ms. Cruz in this case.  As such, *Siddig* in no way supports either that equitable tolling, even if it was appropriate in this case, should continue past the date of Ms. Cruz's "escape," or that discovery should be permitted on the issue, as Ms. Cruz has alternatively requested.  (*See* Appellant's Br. 34.)[8]

Given the lack of any legal support for Ms. Cruz's contention that equitable tolling should go on "long past" her "escape" from the Defendants, Ms. Cruz and the amici curiae assert that factual circumstances supposedly support that trafficking victims should be permitted some indeterminate, though clearly lengthy, period of time within which to assert their claims under the TVPA and the FLSA.  For example,

---

[8]Ms. Cruz also includes a passing reference to *Hernandez v. Attisha*, No. 09-CV-2257-IEG (WMC), 2010 WL 816160 (S.D. Cal. Mar. 5, 2010), yet another case that does not support her argument in this regard.  In that case, the court concluded that the plaintiff's state law claims were equitably tolled because the plaintiff, who alleged that "her confinement to Defendants' home was total and their control over her continuous," could not "pursue her legal remedies until her release from Defendants' control on July 23, 2008," which was less than 15 months before she filed on October 13, 2009. *Id.* at *6.

amici Freedom Network (USA) and Damayan Migrant Workers Association, Inc., posit that "special visa workers often find themselves alone in a strange country, without friends or resources, and trapped—whether by physical means or intimidation—in the homes of foreign officials far more powerful than they are." (Amicus Br. (Doc. 17-1) 19.)  Amici assert that Ms. Cruz found herself in that very situation, that is, "isolated . . . from her family, friends, and the local community while she was held at [the Defendants'] home."  (Amicus Br. (Doc. 17-1) 20.)

But even accepting Ms. Cruz's allegations as true, as required at this stage of the proceeding, Ms. Cruz's isolation necessarily ended when she "escaped" on January 17, 2008 after making "contact with a friend who she learned was living in the United States [and] who gave her the contact information for someone who could help her escape."  (JA 22.)  On that "pre-arranged day," Ms. Cruz gathered all of the papers she could find that related to her employment and immigration status and drove away from the Defendants' home with another person who arrived in "a van [that] pulled up to the side of the Barba's house and gave a signal to Ms. Cruz."  (JA 22.)  Having "escaped" her isolation on that day, "with the help of her friend" (JA 22), there is no legal support in the cases cited by Ms. Cruz or factual support in her pleading for the notion that equitable tolling would have continued for the year and one-half to two and one-half years required to render her TVPA and FLSA claims, respectively, timely.  As such, the district court correctly ruled that Ms. Cruz had

failed to plead sufficient facts for the doctrine of equitable tolling to be applied and dismissed those claims with prejudice, as no amount of repleading could fix the problem given what Ms. Cruz has already pleaded.  (JA 112, 115.)

Ms. Cruz nevertheless has one final arrow in her quiver, arguing that the statute of limitations as to her FLSA claim was tolled until she acquired actual notice of her rights or retained an attorney because the Defendants allegedly did not post a notice explaining the wage and hour requirements of the FLSA, as required by a regulation promulgated by the Wage and Hour Division of the U.S. Department of Labor.  (*See* Appellants' Br. 36-41.)  The regulation in question provides that

> [e]very employer employing any employees subject to the [FLSA's] minimum wage provisions shall post and keep posted a notice explaining the [FLSA], as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

29 C.F.R. § 516.4.

The Wage and Hour Division has prescribed a form of minimum wage poster that provides the required notice in accordance with § 516.4.  *See* United States Department of Labor: Wage and Hour Division: Fair Labor Standards Act (FLSA) Minimum Wage Poster, http://www.dol.gov/whd/regs/compliance/posters/flsa.htm (last visited Jan. 14, 2014).[9]  The poster is available in various languages in addition

---

[9]In reviewing a Rule 12(b)(6) dismissal, the Court may properly take judicial notice of matters of public record, including information publicly available on a government website. *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.

to English, but not in the Tagalog language spoken by Ms. Cruz. (JA 9.) *See* United

States Department of Labor: Wage and Hour Division: Minimum Wage,

http://www.dol.gov/whd/minimumwage.htm (last visited Jan. 14, 2014). Ms. Cruz

has admitted that she has limited knowledge of the English language (JA 9, 10, 29),

which supposedly "left her completely dependent upon the [Defendants] to inform her

of her rights" (Appellant's Br. 42). As such, there is no question that posting the

notice in the form prescribed by the Wage and Hour Division would not actually have

notified Ms. Cruz of her rights under the FLSA. While Ms. Cruz seeks to benefit

from an equitable doctrine limiting the application of the statute of limitations to her

FLSA claim based on the Defendants' failure to put up the minimum wage poster, it

is a basic proposition of equity that "courts should not require the performance of acts

when the doing of them will not further any worthwhile purpose." *Jaffe-Spindler Co.*

*v. Genesco, Inc.*, 747 F.2d 253, 258 (4th Cir. 1984); *cf. Leon v. Pelleh Poultry Corp.*,

No. 10 CIV. 4719 GAY, 2011 WL 4888861, at *3 (S.D.N.Y. Oct. 13, 2011) (finding

that a possible basis for equitable tolling was established where the "required posted

notices could conceivably have been the only way [the workers] would have become

aware of their right to such [overtime] compensation under the FLSA"). In short, it

would make little sense to toll indefinitely the limitations period for Ms. Cruz's FLSA

---

2009).

claim based on the Defendants' failure to post a notice that Ms. Cruz would not have understood anyway.

Moreover, the law on equitable tolling based on a failure to post the required notice under 29 C.F.R. § 516.4 is not nearly so clear-cut as Ms. Cruz would have the Court believe. Ms. Cruz cites a number of cases in her favor (*see* Appellant's Br. 37-38), but fails to point out many other cases deciding to the contrary that an employer's "fail[ure] to discharge its legal obligation to post a notice informing its employees of their rights" under the FLSA, "without more, does not suffice" to invoke the doctrine of equitable tolling, *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012); *see also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 319 (S.D.N.Y. 2011) (the circumstances are not extraordinary and equitable relief is not warranted where there is no allegation that the defendants engaged in "some sort of deception" in addition to failing to post the required notice); *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 CIV. 3725 DC, 2010 WL 4159391, at *1 (S.D.N.Y. Sept. 30, 2010) (same); *Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2010 WL 3219501, at *6 (N.D. Cal. Aug. 13, 2010) (agreeing with those courts holding "that failure to post notices alone does not warrant equitable tolling"); *Noble v. Serco, Inc.*, No. Civ. A. 3:08-76-DCR, 2009 WL 3254143, at *5 (E.D. Ky. Oct. 7, 2009) ("[B]ecause the Sixth Circuit has indicated that a violation of the notice-posting regulation is not a sufficient ground for tolling of the FLSA statute of limitations,

amendment of the complaint to add such an allegation would be futile."); *Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168, 1176 (S.D. Fla. 2007) ("[E]ven if Defendants failed to post the FLSA notice, such is not grounds for equitably tolling the statute of limitations."); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 904 (S.D. Ohio 2003) (following the Sixth Circuit's determination that "an employer's failure to post the notice required under the FLSA does not necessarily toll the statute of limitations on the plaintiff's claim for overtime pay"); *cf. Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-CV-0049-DFHTAB, 2006 WL 2850020, at *6 (S.D. Ind. Sept. 29, 2006) ("It is not at all clear that a failure to comply with the regulation tolls the FLSA's statute of limitations. The regulation itself does not provide for that sanction.").

As indicated by two of these cases, the Sixth Circuit, which appears to be the only circuit court of appeal to have addressed this question under the FLSA,[10] has

---

[10]In the absence of controlling Fourth Circuit authority under the FLSA, Ms. Cruz argues that the district court erred in "fail[ing] to consider this Court's on-point decision" in *Vance v. Whirlpool Corp.*, 716 F.2d 1010 (4th Cir. 1983), *cert. denied*, 465 U.S. 1102 (1984), a case decided under the Age Discrimination in Employment Act (the "ADEA"), not the FLSA. (Appellant's Br. 36.) Ms. Cruz contends that the reasoning of *Vance* should be extended to this case based primarily on the decision of a district court in the Northern District of Illinois. (*See* Appellant's Br. 38-41 (citing *Cortez v. Medina's Landscaping*, No. 00 C 6320, 2002 WL 31175471 (N.D. Ill. Sept. 30, 2002), throughout).) But whatever the merits of the *Cortez* decision in general, it does not support application of equitable tolling to Ms. Cruz's FLSA claim in this case. The decision in *Cortez* was based in large part on the notion that the posting requirement was imposed on employers "to insure that protected employees would be fully informed of their rights under the ADEA" and, by extension, the

held that "[t]he doctrine of equitable tolling does not save the plaintiffs' claims" where the employer "fail[s] to post the required Department of Labor notice of employees' rights under the FLSA." *Archer v. Sullivan County, Tenn.*, 129 F.3d 1263, 1997 WL 720406, at *4 (6th Cir. 1997) (unpublished table disposition). In so holding, the Sixth Circuit rejected the plaintiffs' assertion that it would be "unfair" to bar any of their claims given the employer's violation of the FLSA by failing to post the required notice, noting that "the entire purpose of statutes of limitations is to provide finitude to liability for wrongs." *Id.* (internal quotation marks omitted); *see also id.* ("We are also mindful of Judge Posner's admonition in *Cada* [*v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990), *cert. denied*, 501 U.S. 1261 (1991),] that statutes of limitations 'protect important social interests in certainty, accuracy, and repose' and should not be trivialized by 'promiscuous application of tolling doctrines.'"). Accordingly, the Sixth Circuit simply was "not persuaded that

---

FLSA. 2002 WL 31175471, at *5 (internal quotation marks omitted); *see also id.* ("[T]he goal of informing employees of their rights [through posting] stands a chance of realization only through a tolling rule[.]"). Tolling was thus seen by the court as a "penalty" needed to provide an "incentive for employers to comply" with the posting requirement so as to realize the "end" of informing employees of their rights. *Id.* In this case, however, there was never any chance that Ms. Cruz would have been fully informed of her rights under the FLSA through the posting of a notice in a language that she could not understand. As such, *Cortez* does not support the application of an indefinite tolling period in this situation to penalize the Defendants for not posting a notice that would not have served the identified "end."

the [employer's] failure to post such a notice justifies invocation of the tolling doctrine." *Id.*

Those courts that have agreed with the Sixth Circuit have shared its concerns over finality and a seemingly limitless expansion of the tolling doctrine based on a failure to post a notice explaining workers' rights under the FLSA:

> [T]o hold that a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime, as it would be a rare employer who failed to pay overtime but announced to its employees that they were entitled to overtime compensation.

*Campanelli*, 2010 WL 3219501, at *6 (internal quotation marks omitted); *accord Cao*, 2010 WL 4159391, at *1.[11]   The court in *Campanelli* thus rejected the rule advocated by the plaintiffs in that case, and Ms. Cruz here, which "could lead to indefinite tolling" and thereby defeat the entire purpose of the statute of limitations under the FLSA.  2010 WL 3219501, at *6.

Finally, "[e]ven assuming the failure to provide notice is sufficient to warrant equitable tolling, plaintiff must show that she exercised due diligence in pursuing her claim" under the FLSA, *Lai v. Leung*, No. CV 11-3561 SJ MDG, 2012 WL 4472155, at *4 (E.D.N.Y. Aug. 31, 2012), just as in any other case in which the plaintiff claims the benefit of equitable tolling, *see, e.g.*, *Chao*, 291 F.3d at 283 ("Equitable tolling

---

[11]The statement applies to minimum pay as much as it does to overtime pay.

is not appropriate, however, 'where the claimant failed to exercise due diligence in preserving [her] legal rights.'" (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))). Here, the facts alleged by Ms. Cruz, together with the cases cited in her own brief, indicate that she cannot establish her due diligence in pursuing her FLSA and other claims against the Defendants.

To reiterate, Ms. Cruz herself admits that she "escaped" from the Defendants after reaching out to a "friend . . . living in the United States who gave her the contact information for someone who could help her escape." (JA 22.) On the "pre-arranged day" of January 17, 2008, the other person, "with the help of [Ms. Cruz's] friend," drove to the Barbas' supposedly "isolated" home in Clifton, which is in Fairfax County, Virginia, and picked her up in a van. (JA 8, 22.) After her "escape," Ms. Cruz waited five and one-half years until July 16, 2013 to commence this action. Even assuming that her FLSA claim is subject to a three-year statute of limitations, *see supra* note 7, Ms. Cruz's claim thus would have been timely only if the period of equitable tolling continued at least through July 16, 2010, which was two and one-half years after her "escape." Having made contact with, and "escaped" with the assistance of, her friend and someone else, two and one-half years would have been more than enough time for Ms. Cruz, in the exercise of due diligence, to have discovered the rights upon which her claims are based. The plaintiff trafficking victims in the cases relied on by Ms. Cruz, which she asserts are all similar to her

situation, all filed their claims asserting their rights under the FLSA and/or the TVPA in less than 15 months, which is less than one-quarter of the 66 months that Ms. Cruz waited to filed this action. *See Kiwanuka*, 844 F. Supp. 2d at 111, 117, 118 (suit filed about 12 months after plaintiff's employment ended); *Siddig*, 810 F. Supp. 2d at 131 (suit filed less than 12 months after plaintiff's "escape" from the defendants' control); *Hernandez*, 2010 WL 816160, at *1 (suit filed less than 15 months after plaintiff's "rescue" from the defendants); *Deressa v. Gobena*, No. 1:05CV1334(JCC), 2006 WL 335629, at *1, *5 (E.D. Va. Feb. 13, 2006)) (suit filed about 14 months after plaintiff's "escape"). As such, the district court did not abuse its discretion in denying Ms. Cruz's equitable tolling argument.

### E. The District Court Correctly Held That Ms. Cruz's Breach-Of-Contract Claim Is Barred Under The Applicable Five-Year Statute Of Limitations.

The final claim that Ms. Cruz continues with on this appeal is that Mrs. Maypa breached all three of the written contracts she had with Ms. Cruz. In Virginia, the statute of limitations for an action on a written contract is five years after the cause of action accrued. *See* Va. Code Ann. § 8.01-246(2); *Informatics Applications Group, Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 415-16 (E.D. Va. 2011). A claim for breach of contract accrues "when the breach occurs . . . and not when the resulting damage is discovered." *See* Va. Code Ann. § 8.01-230; *see also Informatics*, 836 F.

Supp. 2d at 416; *Shipman v. Kruck*, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004) (this is true even though this rule may produce inequities by triggering a statute of limitations when the injury or damage is unknown or difficult or even incapable of discovery).

Here, Ms. Cruz concedes, both in her pleading and in her brief on appeal, that Mrs. Maypa breached each of the contracts not long after she entered into them.  (*See* JA 14-15; Appellant's Br. 7 ("When Ms. Cruz arrived in Virginia, nothing was as promised."); *id*. at 8 n.2 ("Ms. Maypa never honored any of these provisions.").) Thus, the causes of action as to each of the contracts would have accrued shortly after Ms. Cruz commenced performance, which was March 2002 for the first contract, January 2004 for the second contract, and February 2005 for the third contract.  (*See* JA 14-15, 26-27.)  Even if there were continuing breaches of the contracts by Mrs. Maypa, that would not have extended the accrual dates of any of the causes of action past those dates.  *See Hunter v. Custom Bus. Graphics*, 634 F. Supp. 2d 420, 430-33 (E.D. Va. 2009).   In any event, no breach-of-contract claim could possibly have accrued after January 17, 2008, when the third contract, which was to have expired on February 28, 2008 anyway, was effectively terminated by Ms. Cruz's "escape" from the Defendants.  (*See* JA 41 (permitting termination of the third contract by either party).)  Because January 17, 2008 was more than five years before this action

was filed, the district court correctly ruled that Ms. Cruz's breach-of-contract claims are time-barred under Virginia law.

As with her federal claims under the TVPA and the FLSA, Ms. Cruz claims the benefit of a form of equitable tolling as to her state breach-of-contract claim under Virginia Code § 8.01-229(D). That subsection provides that

> [w]hen the filing of an action is obstructed by a defendant's (i) filing a petition in bankruptcy or filing a petition for an extension or arrangement under the United States Bankruptcy Act or (ii) using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

Va. Code Ann. § 8.01-229(D). In this case, Ms. Cruz argues that the Defendants obstructed her from filing a breach-of-contract claim against them by keeping her in "virtual isolation from the world outside of their home." (Appellant's Br. 46.) Accepting Ms. Cruz's allegations as true, these facts may be "sufficient to toll her contract claims through at least her escape on January 17, 2008," as Ms. Cruz asserts, but no longer. (Appellants' Br. 46 (citing *Kiwanuka*, 844 F. Supp. 2d at 120, and *Deressa*, 2006 WL 335629, at *1, *4).)

*Kiwanuka*, which is discussed above, did not apply the Virginia tolling statute, but used District of Columbia rules on equitable tolling. In that case, the plaintiff, much like Ms. Cruz here, alleged that the defendants both "lulled her into inaction by exploiting her limited knowledge of English [and] misleading her about her rights under state and federal law," and "took affirmative steps to prevent [her] from

32

initiating legal proceedings to vindicate her rights—including confiscating her identity documents and passport and keeping her in isolation." 844 F. Supp. 2d at 119-20. Under those circumstances, the court concluded that under District of Columbia law, the statute of limitations was tolled on the plaintiff's tort and breach-of-contract claims until she was "free from the defendants' control and able to assert her legal rights in July 2009, when her first contact with the FBI took place," *id.* at 120, which was even before the plaintiff's employment terminated in August 2009, *id.* at 111, 117, 118. Since the plaintiff filed suit only a year later, in August 2010, the court found that her claims were timely filed and could not be dismissed on statute of limitations grounds. *Id.* at 120. Here, too, Ms. Cruz could have brought suit after January 17, 2008, when she "escaped" from her isolation by the Defendants with the help of her friend and another person, after which she was "free from the [D]efendants' control." *Id.*

In *Deressa*, the plaintiff was an Ethiopian citizen employed by the defendants as a live-in domestic worker from June 22, 1998 until her "escape" on September 22, 2004. 2006 WL 335629, at *1, *5. The plaintiff brought suit on November 21, 2005, 14 months after her "escape," asserting various claims, including breach of contract and fraudulent misrepresentation under Virginia law. The plaintiff claimed the benefit of Virginia Code § 8.01-229(D), alleging that she, similar to Ms. Cruz, was obstructed from filing her action by the defendants, who "threatened [her] with

33

deportation . . . , forbade [her] from leaving their residence, and took several measures to ensure that [she] would not venture outside of the residence." 2006 WL 335629, at *4. The court found that these allegations, if true, constituted affirmative acts designed to prevent the plaintiff from obtaining her wages or taking steps to enforce her contractual and common-law rights and, therefore, that § 8.01-229(D) tolled the statutes of limitations as to her claims for breach of contract and fraud "during the entire term of her employment, through September 22, 2004." *Id.*

In sum, neither *Deressa* nor *Kiwanuka* provides any support for Ms. Cruz's contention that the statute of limitations for her breach-of-contract claim against Mrs. Maypa was tolled past the date of her "escape" from the Defendants on January 17, 2008. Rather, both cases indicate that the five-year statute of limitations on Ms. Cruz's claim would have commenced running no later than the date of her "escape," at which time her employment by Mrs. Maypa pursuant to their third contract terminated. Because Ms. Cruz failed to bring suit within five years after that day, her breach-of-contract action is time-barred under Virginia law, even assuming that equitable tolling under § 8.01-229(D) is appropriate here.

## CONCLUSION

In light of the foregoing, the Court should affirm in its entirety the decision of the district court dismissing with prejudice all of Ms. Cruz's claims against all of the Defendants.

Respectfully submitted,

 /s/ Timothy J. Battle
Timothy J. Battle
Virginia Bar No. 18538
524 King Street
Alexandria, Virginia  22314
Telephone:  (703) 836-1216
Email:  tjbattle@verizon.net

Attorney for Defendants-Appellees

## CERTIFICATE OF COMPLIANCE

I certify that

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,341 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated:  February 4, 2014               /s/ Timothy J. Battle_____
                                                    Attorney for Defendants-Appellees

# CERTIFICATE OF SERVICE

I certify that on February 4, 2014, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Joseph D. West, Esquire
W. Jeremy Robison, Esquire
Christopher B. Leach, Esquire
Marisa C. Maleck, Esquire
Kathryn E. Hoover, Esquire
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

Dana Sussman, Esquire
SAFE HORIZON
50 Court Street, 8th Floor
Brooklyn, NY  11201

*Counsel for Plaintiff-Appellant*

Alison B. Marshall, Esquire
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113

Traci Lovitt, Esquire
JONES DAY
100 High Street, 21st Floor
Boston, MA  02100-1781

Rachel S. Bloomekatz, Esquire
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH  43215-2673

*Counsel for Senator Marco Rubio*

Amelia L.B. Sargent, Esquire
Mark B. Helm, Esquire
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560

Ellen M. Richmond, Esquire
Nathan M. Rehn, Esquire
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907

*Counsel for Freedom Network (USA) and
Damayan Migrant Workers Association, Inc.*

Dated:  February 4, 2014          /s/ Timothy J. Battle
                                  Attorney for Defendants-Appellees