No. 13-2363

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

Cristina Fernandez Cruz,

*Plaintiff-Appellant*,

-v-

Nilda J. Maypa, Michelle Barba, a/k/a Michelle Maypa,
Ferdinand Barba,

*Defendants-Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

_____

**REPLY BRIEF FOR APPELLANT**

_____

Dana Sussman
SAFE HORIZON
50 Court Street, 8th Floor
Brooklyn, N.Y. 11201
(718) 943-8631

Joseph D. West
W. Jeremy Robison
Christopher B. Leach
Marisa C. Maleck
Kathryn E. Hoover
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Counsel for Appellant*

_____

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................1

ARGUMENT ..................................................................................3

I.   The District Court Erred When It Dismissed Ms. Cruz's TVPA
     Claims .................................................................................3

     A. Applying The Ten-Year Limitations Period Would Not Produce
        An Impermissible Retroactive Effect ......................................3

     B. The Effective-Date Provision In Title IV Of The Reauthorization
        Act Does Not Clearly Prescribe The Statute Of Limitation's
        Temporal Reach.................................................................5

          1.  Title IV's Effective-Date Provision Does Not Apply To The
              Extended Limitations Period ..........................................6

          2.  Even If The Effective-Date Provision Applied, It Does Not
              Prescribe The Temporal Reach Of The Limitations Period.................8

          3.  The Appellees Rely On Cases That Actually Counsel In Favor
              Of Considering The Statute's Retroactive Effects ...........................10

     C. Ms. Cruz's Claims Were Alive No Matter When The Extended
        Limitations Period Took Effect ............................................15

II.  The Statute Of Limitations For Ms. Cruz's FLSA Claims Tolled Until
     She Received Actual Notice Of Her Rights ...................................16

III. Whether The Appellees' Conduct Constitutes "Extraordinary
     Circumstances" To Equitably Toll Ms. Cruz's TVPA And FLSA
     Claims Is A Factual Question Requiring Discovery .....................22

IV.  Ms. Cruz's Allegations In Support Of Equitably Tolling Her Breach
     Of Contract Claims Are Well Pled ...........................................27

CONCLUSION ...............................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alitzer v. Deeds*,
  191 F.3d 540 (4th Cir. 1999) .................................................. 11, 12

*Angles v. Dollar Tree Store*,
  494 F. App'x 326 (4th Cir. 2012) ...................................................24

*Archer v. Sullivan Cnty.*,
  128 F.3d 1263, 1997 WL 720406 (6th Cir. 1997) ................................... 20, 21

*Baldwin v. City of Greensboro*,
  714 F.3d 828 (4th Cir. 2013)...................................................4

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ...................................................6

*Camayo v. John Peroulis & Sons Sheep, Inc.*,
  No. 10-cv-00772, 2013 WL 3927677
  (D. Colo. July 30, 2013)...................................................5

*Campanelli v. Hershey Co.*,
  No. 08-cv-1862, 2010 WL 3219501
  (N.D. Cal. Aug. 13, 2010) ...................................................18

*Copantitla v. Fiskardo Estiatorio, Inc.*,
  788 F. Supp. 2d 253 (S.D.N.Y. 2011)...................................................19

*Cortez v. Medina's Landscaping, Inc.*,
  No. 00-cv-6320, 2012 WL 31175471 (N.D. Ill. Sept. 30, 2002)...................17

*Creek Coal Co. v. Bates*,
  134 F.3d 734 (6th Cir. 1997)................................................... 12, 14

*Ctr. for Biological Diversity v. U.S. Dep't of Agric.*,
  626 F.3d 1113 (9th Cir. 2010)...................................................9

*Deressa v. Gobena*,
  No. 05-C-1334 (JCC), 2006 WL 335629
  (E.D. Va. Feb. 13, 2006) ................................................... 28, 29

*Doe v. Siddig*,
  810 F. Supp. 2d 127 (D.D.C. 2011) ................................................... 24, 26

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*E.E.O.C. v. Navy Fed. Credit Union,*
   424 F.3d 397 (4th Cir. 2005)................................................17

*English v. Pabst Brewing Co.,*
   828 F. 2d 1047 (4th Cir. 1987)...........................................21

*FDIC v. Cocke,*
   7 F.3d 396 (4th Cir. 1993)................................................27

*Fernandez-Vargas v. Gonzales,*
   548 U.S. 30 (2006) ........................................................9

*Gunawan v. Sake Sushi Rest.,*
   897 F. Supp. 2d 76 (E.D.N.Y. 2012) ...................... 18, 20

*Guy v. E.I. DuPont de Nemours & Co.,*
   792 F.2d 457 (4th Cir. 1986)............................... 19, 23

*Hamdan v. Rumsfeld,*
   548 U.S. 557 (2006) ......................................................9

*Headley v. Church of Scientology Int'l,*
   No. CV 09-3986 DSF, 2009 U.S. Dist. LEXIS 131766
   (C.D. Cal. Aug. 12, 2009) .............................................4, 5

*In re Enter. Mortg. Acceptance Co., LLC, Secs. Litig.,*
   391 F.3d 401 (2d Cir. 2004)...........................................3

*INS v. St. Cyr,*
   533 U.S. 289 (2001) ...................................................8, 9

*Kiwanuka v. Bakilana,*
   844 F. Supp. 2d 107 (D.D.C. 2012) ................... 26, 28, 29

*Kuusk v. Holder,*
   732 F.3d 302 (4th Cir. 2013)..........................................22

*Landgraf v. USI Film Prods.,*
   511 U.S. 244 (1994) .............................. 1, 8, 9, 11, 12

*Latham v. Bd. of Educ.,*
   489 F. App'x 239 (10th Cir. 2012) ..................... 12, 13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Lewis v. Gupta*,
54 F. Supp. 2d 611 (E.D. Va. 1999).............................................................4

*Lyle v. Food Lion, Inc.*,
954 F.2d 984 (4th Cir. 1992).....................................................................22

*Lytes v. DC Water & Sewer Auth.*,
572 F.3d 936 (D.C. Cir. 2009) ............................................................ 12, 13

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128 (1988) ..................................................................................21

*Mironescu v. Costner*,
480 F.3d 664 (4th Cir. 2007)......................................................................3

*Monoson v. United States*,
516 F.3d 163 (3d Cir. 2008)......................................................................10

*Nevada ex rel. Dep't of Transp. v. United States*,
925 F. Supp. 691 (D. Nev. 1996).................................................................7

*Newman v. Walker*,
618 S.E.2d 336 (Va. 2005).........................................................................28

*Noble v. Serco, Inc.*,
No. Civ. A. 3:08-76-DCR, 2009 WL 3254143
(E.D. Ky. Oct. 7, 2009) .............................................................................19

*Olatunji v. Ashcroft*,
387 F.3d 383 (4th Cir. 2004).....................................................................11

*P. Stoltz Family P'ship L.P. v. Daum*,
355 F.3d 92 (2d Cir. 2004).........................................................................27

*Powell v. Carey Int'l, Inc.*,
483 F. Supp. 2d 1168 (S.D. Fla. 2007) ......................................................19

*Quicken Loans Inc. v. Alig*,
737 F.3d 960 (4th Cir. 2013)......................................................................18

*Rouse v. Lee*,
339 F. 3d 238 (4th Cir. 2003).....................................................................24

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Stogner v. California*,
539 U.S. 607 (2003) ....................................................................4

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
133 S. Ct. 2517 (2013) ...............................................................7

*Vance v. Whirlpool Corp.*,
716 F.2d 1010 (4th Cir. 1983) ............................................ 16, 19

*Vartelas v. Holder*,
132 S. Ct. 1479 (2012) ..............................................................10

*Veerkamp v. U.S. Sec. Assocs., Inc.*,
No. 1:04-CV-0049-DFHTAB, 2006 WL 2850020
(S.D. Ind. Sept. 29, 2006) .........................................................19

*Vidiedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*,
246 F. Supp. 2d 886 (S.D. Ohio 2003) .....................................19

*Wahi v. Charleston Area Med. Ctr., Inc.*,
562 F.3d 599 (4th Cir. 2009) .............................................. 3, 21

*Ward v. Dixie Nat'l Life Ins. Co.*,
595 F.3d 164 (4th Cir. 2010) ........................................ 8, 10, 12

*Williams v. Metro. Life Ins. Co.*,
609 F.3d 622 (4th Cir. 2010) .....................................................25

**Statutes**

18 U.S.C. § 1589 .............................................................................15

18 U.S.C. § 1590 .............................................................................15

18 U.S.C. § 1595 ...............................................................................6

22 U.S.C. § 2151 ...............................................................................6

Va. Code § 8.01-229 ........................................................................27

Victims of Trafficking and Violence Protection Act of 2000,
Pub. L. No. 106-386, 114 Stat. 1466 ........................................25

Victims of Trafficking and Violence Protection Act of 2000,
Pub. L. No. 106-386, 114 Stat. 1466 (2000) .............................25

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

William Wilberforce Trafficking Victims Protection
    Reauthorization Act of 2008,
    Pub. L. No. 110-457, 122 Stat. 5044 (2008) ........................................ 1, 6, 7, 8

**Rules**

Fed. R. Civ. P. 8 ................................................................................................24

**Regulations**

29 C.F.R. § 516.4 ...............................................................................................16

**Other Authorities**

Dep't of Labor, Wage & Hour Div.,
    Fair Labor Standards Act Minimum Wage Poster ..........................................18

Heather J. Clawson, et al., U.S. Dep't of Health & Human Servs.,
    *Treating the Hidden Wounds: Trauma Treatment & Mental Healthy*
    *Recovery for Victims of Human Trafficking* (2008) ........................................23

## PRELIMINARY STATEMENT

For nearly six years, Appellant Cristina Fernandez Cruz lived as a modern-day slave under the Appellees' yoke. The scars from this harrowing ordeal did not soon heal, as Ms. Cruz continued to live in fear that the Appellees would make good on threats to hunt her down and deport her if she ever escaped.

The Appellees now seek to profit from their misdeeds, urging this Court to affirm the District Court's dismissal of Ms. Cruz's claims as untimely. They would capitalize on the District Court's erroneous refusal to apply a ten-year statute of limitations to her claims under the Trafficking Victims Protection Act ("TVPA"). They also argue that Ms. Cruz is not even entitled to discovery in support of tolling arguments for her other claims under the Fair Labor Standards Act ("FLSA") and Virginia contract law. Yet, throughout their brief, they fail to address Ms. Cruz's primary contentions:

***First***, applying the TVPA's extended statute of limitations to Ms. Cruz's unexpired claims would not have an impermissible retroactive effect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). The Appellees argue that an effective-date provision in Title IV of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ("Reauthorization Act"), somehow resolves the retroactivity question in their favor. But the statute's plain language shows that Title IV's effective-date

provision applies only to Title IV—it does not apply to the Reauthorization Act's other titles, including Title II, which contains the TVPA's extended limitations period. In any event, Ms. Cruz's claims were still alive at the time the Appellees contend the statute took effect; nothing in the effective-date provision precludes application of the extended limitations period to unexpired claims.

**Second**, this Circuit tolls employee claims where employers fail to post required notices informing employees of their federal statutory rights. The Appellees argue that their failure to post FLSA notices was harmless because a non-native English speaker like Ms. Cruz would not have been able to understand the notice. This is speculative as a factual matter. It is also not the law. Indeed, their proffered rule would provide *fewer* protections to the most vulnerable employees.

**Third**, Ms. Cruz's allegations are sufficient to warrant discovery on whether her claims could be equitably tolled past the date of her escape. The Appellees wrongly state that the District Court's decision to dismiss is reviewable for abuse of discretion only, cite inapposite cases that do not involve a motion to dismiss, and nitpick immaterial aspects of various cases that Ms. Cruz relied on in her opening brief. The Appellees' arguments do not change the fact that discovery is necessary to prove whether equitable tolling is warranted; Ms. Cruz's allegations

are sufficient to proceed past the motion to dismiss stage (or to at least permit her to amend her complaint).

The Appellees present no viable arguments to affirm the District Court's erroneous dismissal of Ms. Cruz's claims.  This Court should reverse.

## ARGUMENT

## I.    The District Court Erred When It Dismissed Ms. Cruz's TVPA Claims

### A. Applying The Ten-Year Limitations Period Would Not Produce An Impermissible Retroactive Effect

In her opening brief, Ms. Cruz established that applying the TVPA's ten-year statute of limitations to her claims would not have an impermissible retroactive effect because it would not attach any new consequences to the Appellees' prior conduct.  Cruz Br. I.A-B.  This rule applies to civil and criminal cases, and has been applied both in this Circuit and in its sister circuits.  *See* Cruz Br. 20-24.

The Appellees tellingly consign their response to this argument to a footnote, waiving it.  *See Mironescu v. Costner*, 480 F.3d 664, 677 n.15 (4th Cir. 2007) ("Even appellees waive arguments.") (alteration and internal quotation marks omitted); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009) (issue raised only in a footnote and addressed with only declarative sentences is waived).  They cite *In re Enterprise Mortgage Acceptance Co., LLC, Securities Litigation*, 391 F.3d 401, 410 (2d Cir. 2004), which stands for the

unremarkable proposition that extending a statute of limitations to resurrect *expired* claims has an impermissible retroactive effect.   Appellees Br. 11 n.4. Indeed, resurrecting stale claims "attach[es] a new legal consequence" because a claim once barred "would be allowed to proceed." *See Baldwin v. City of Greensboro*, 714 F.3d 828, 836 (4th Cir. 2013).[1]  In contrast, applying an extended statute of limitations to *unexpired* claims—like Ms. Cruz's claims—has no retroactive effect because the Appellees were never "safe [ ] from pursuit." *See Stogner v. California*, 539 U.S. 607, 611 (2003); *see also* Cruz Br. I.A-B.  At least with respect to Ms. Cruz's claims that were alive when the limitations period was extended, the Appellees do not dispute this point (Appellees Br. 15), thereby conceding it.

The Appellees also have no answer for the district-court authority applying the extended TVPA limitations period to unexpired claims.   Although the Appellees take issue with the fact that *Headley v. Church of Scientology International*, No. CV 09-3986 DSF, 2009 U.S. Dist. LEXIS 131766 (C.D. Cal. Aug. 12, 2009), cited the (allegedly) wrong effective date for the limitations period and briefly noted the statute's dearth of legislative history (Appellees Br. 13-14), neither issue was relevant to its holding that "extending unexpired limitations

---

[1]    *Lewis v. Gupta*, 54 F. Supp. 2d 611, 617 (E.D. Va. 1999) (Appellees Br. 14), is also inapposite, as the plaintiff's claim there had expired.

periods[] . . . is not so 'harsh and oppressive' as to violate 'instinctive feelings of justice and fair play.'" *Id*. at *20. And although the Appellees criticize the discussion of the "procedural/substantive dichotomy" in *Camayo v. John Peroulis & Sons Sheep, Inc.*, No. 10-cv-00772, 2013 WL 3927677 (D. Colo. July 30, 2013), (Appellees Br. 14), they do not deny that applying the TVPA's statute of limitations to unexpired claims is "procedural" because it does not affect any parties' "primary conduct"—that is, the conduct that violated the TVPA. Indeed, the Appellees provide no rationale to rebut the numerous Supreme Court cases holding that extended statutes of limitations can apply retroactively in ways that changes in regulations of primary conduct cannot. *See* Cruz Br. 20-21, 26 (collecting authorities).

### B. The Effective-Date Provision In Title IV Of The Reauthorization Act Does Not Clearly Prescribe The Statute Of Limitation's Temporal Reach

The Appellees' only substantive argument is that an effective-date provision in Title IV of the Reauthorization Act somehow clearly prescribes the limitation period's temporal reach. This effective date, the Appellees argue, relieved the District Court of any obligation to consider whether applying the extended ten-year statute of limitations would pose an impermissible retroactive effect. Appellees Br. 9, 12-13. This argument fails.

**1. Title IV's Effective-Date Provision Does Not Apply To The Extended Limitations Period**

As an initial matter, Title IV's text makes plain that its effective-date provision does not apply to the TVPA's extended limitations period.[2]  *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 177 (2004) ("The inquiry begins with the statutory text, and ends there as the text is unambiguous.").  Title IV—one of the Reauthorization Act's four titles—is entitled the "Child Soldiers Prevention Act of 2008"; its effective-date provision states that "[t]his *title*, and the amendments made by this title, shall take effect 180 days after the date of the enactment of this Act."  *See* Reauthorization Act, Title IV, §§ 404, 407 (emphasis added); 22 U.S.C. § 2151 note.  It thus applies *only* to Title IV's provisions.[3]

The TVPA's extended limitations period, however, is not in Title IV.  Rather, it is in Subtitle C of Title II.  *See* Reauthorization Act, Title II § 221; 18 U.S.C. § 1595(c).  And none these subdivisions—Title II, Subtitle C, or the section extending the TVPA's limitations period—include an effective-date provision.  In short, the Reauthorization Act's unambiguous language shows that Title IV's

---

[2]   The District Court stated that the extended statute of limitations went into effect on June 20, 2009.  J.A. 109.  Because the issue was not germane to the retroactivity question, Ms. Cruz was willing to assume in her opening brief that the District Court's conclusion was correct.  But it is not.

[3]   To assist the Court's review, Ms. Cruz provides Section 407 as an addendum to this brief.  The Reauthorization Act is available at http://www.gpo.gov/fdsys/pkg/PLAW-110publ457/pdf/PLAW-110publ457.pdf.

effective-date provision does not apply to the TVPA's extended limitations period. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528-29 (2013) (holding that the status-based discrimination ban in one section of a statute did not apply to the antiretaliation provision in a different part of the statute).

The Reauthorization Act's structure also buttresses the plain reading of Title IV's effective-date provision. The statute is riddled with effective-date provisions for various sections and subsections. *See* Reauthorization Act § 201(f)(1) ("[A]mendments made by this section shall take effect on the date of enactment of the Act."); *id*, § 205(a)(2) ("[A]mendment . . . shall take effect on the date of the enactment of this Act."); *id*. § 211(b) ("The amendments made by subsection (a) shall apply to applications for public benefits . . . provided on or after the date of the enactment of this Act."); *id*. § 235(h) ("This section shall take effect on the date that is 90 days after the date of the enactment of this Act."). The Appellees fail to mention these provisions, which demonstrate that Title IV's effective-date provision does not govern the whole Reauthorization Act.[4] The omission of any

---

[4]    Indeed, Title IV's effective-date provision appears aimed at providing the Executive Branch time to take certain required administrative actions. *See Nevada ex rel. Dep't of Transp. v. United States*, 925 F. Supp. 691, 695 n.6 (D. Nev. 1996) (an effective-date provision "merely indicates the date when an action can first be brought and when the time begins to run for issuing regulations and doing other future acts mandated by the statute"). For example, Section 404 bars the United States from providing military assistance to countries employing child soldiers unless the President waives this limitation.

*(Cont'd on next page)*

similar clause governing Title II as a whole is thus fatal. *See INS v. St. Cyr*, 533 U.S. 289, 318-19 (2001) (refusing to read one provision of a statute "as dictating the temporal reach" of another provision in light of "Congress' willingness, in other sections . . . to indicate unambiguously its intention to apply specific provisions retroactively").

### 2. Even If The Effective-Date Provision Applied, It Does Not Prescribe The Temporal Reach Of The Limitations Period

Moreover, Title IV's effective-date provision—even if applicable—says nothing about whether Congress intended the TVPA's extended limitations period to apply to claims that were alive on its effective date. "The standard for express prescription is a demanding one, requiring prescription that is truly express and unequivocal." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 173 (4th Cir. 2010). The Supreme Court's decision in *Landgraf* controls.

In *Landgraf*, the Court addressed an effective-date provision comparable to the effective-date provision in Title IV—"[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment"—and concluded that the "language does not, by itself, resolve" "whether Congress has expressly prescribed the statute's proper reach." *Landgraf,*

---

*(Cont'd from previous page)*

See Reauthorization Act § 404; *see also id.* §§ 405, 406 (directing the Secretary of State to take certain actions).

511 U.S. at 257, 280.[5]  The Court explained:  "the instruction that the provisions are to 'take effect upon enactment' [means] that courts should evaluate each provision of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and preenactment conduct."  *Landgraf*, 511 U.S. at 280.  Because the Court determined that the statute at issue did not clearly prescribe its own temporal reach—despite the effective-date provision—it considered whether applying the statute to the petitioner's claims would have an impermissible retroactive effect.  *Id*. at 280-84; *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 579 n.9 (2006) (provision that a statute will "take effect on the date of the enactment" "is not dispositive" in triggering the presumption against retroactivity); *St. Cyr*, 533 U.S. at 317 (holding that the "mere promulgation of an effective date for a statute" is ambiguous); *cf. Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 38 (2006) (no express prescription absent "any clause expressly dealing with" conduct before the effective date).

The effective-date provision in Title IV is analogous to *Landgraf*'s ambiguous effective-date provision.  Indeed, the only difference appears to be that the statute in *Landgraf* took effect upon enactment, whereas Title IV took effect

---

[5]  *Accord Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 626 F.3d 1113, 1117 (9th Cir. 2010) ("As for the first step, the Court in *Landgraf* already addressed an effective-date provision very similar to that in the [the statute at issue] and concluded that it did not constitute express direction from Congress in either direction.").

180 days after enactment. This distinction is immaterial. *See, e.g.*, *Vartelas v. Holder*, 132 S. Ct. 1479, 1487 (2012) (explaining that the language, "shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment," "did not expressly prescribe the temporal reach of the . . . provision in question"); *Monoson v. United States*, 516 F.3d 163, 167 (3d Cir. 2008) ("[A] statement that the statute 'shall take effect 180 days after the enactment of this Act'" "does not contain any clear command indicating that the legislature intended the law to be applied prospectively or retrospectively."). Title IV's effective-date provision—even if applicable here—thus does not conclusively determine the temporal scope of the TVPA's extended limitations provision.

### 3. The Appellees Rely On Cases That Actually Counsel In Favor Of Considering The Statute's Retroactive Effects

Rather than addressing this precedent, the Appellees rely on five cases to argue that Title IV's effective-date provision unambiguously prescribes the temporal reach of the TVPA's limitations period. But these cases stand for two distinct and irrelevant propositions: that Congress *could* proscribe a statute's temporal reach; and that effective-date provisions have different retroactivity implications when applied to substantive—as opposed to procedural—statutory provisions. These cases thus underscore that Title IV's effective-date provision is neither "truly express" nor "unequivocal" in establishing the TVPA's extended-limitations period's temporal reach. *Ward*, 595 F.3d at 173.

**a.** With respect to binding precedent, the Appellees cite *Alitzer v. Deeds*, 191 F.3d 540 (4th Cir. 1999), and *Olatunji v. Ashcroft*, 387 F.3d 383 (4th Cir. 2004), for the proposition that courts consider impermissible retroactive effects "where the statute does not contain an express effective date." Appellees Br. 10-11 (citing *Alitzer*, 191 F.3d at 545; *Olatunji*, 387 F.3d at 389 & n.3). To the extent that the Appellees rely on these cases to suggest that this Court does *not* consider retroactive effects when there is an effective-date provision, they are wrong.

Recall that the *Landgraf* Court explained how an effective-date provision could clearly establish Congress's intent for a statute to apply retrospectively. *See Landgraf*, 511 U.S. at 259-60 ("Had Congress wished § 402(a) to have such a determinate meaning, it surely would have used language comparable to its reference to the predecessor Title VII damages provisions in the 1990 legislation: that the new provisions 'shall apply to all proceedings pending on or commenced after the date of enactment of this Act.'"). The language in *Alitzer* and *Olatunji* is nothing but a nod to that point. At most, the cases suggest that effective-date provisions *may* provide a clear directive for this Court to apply a statute retrospectively or prospectively—but say little about how such clauses should be analyzed.[6]

---

[6] If anything, *Alitzer* suggests that an effective-date provision does *not* provide sufficiently clear guidance as to Congress's intent because there this Court
*(Cont'd on next page)*

**b.**     With respect to out-of-circuit precedents, the Appellees cite to *Latham v. Board of Education*, 489 F. App'x 239 (10th Cir. 2012); *Lytes v. DC Water & Sewer Authority*, 572 F.3d 936 (D.C. Cir. 2009); and *Creek Coal Co. v. Bates*, 134 F.3d 734 (6th Cir. 1997).  The Appellees' reliance on these cases fares no better.  Each of these cases is consistent with *Landgraf*'s instruction that "courts should evaluate *each provision* of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and pre-enactment conduct" when interpreting a statutory provision with an effective date.  *Landgraf*, 511 U.S. at 259-60 (emphasis added).  Indeed, not one of these cases considered the effect of an effective-date provision in a vacuum, as the Appellees urge this Court to do.  Instead, each opinion construed the effective-date provision in tandem with the "substantive" provisions of the statute that operated to impose additional liability on the defendant.  *Lytes*, 572 F.3d at 940; *Latham*, 489 F. App'x at 245; *Cold Creek*, 134 F.3d at 738.

---

*(Cont'd from previous page)*

assumed that the statute in question "became effective on the day it was enacted into law," but nevertheless "proceed[ed] to the second step in the *Landgraf* analysis."  *Alitzer*, 191 F.3d at 545; *see also Ward*, 595 F.3d at 173 (reaching step two in the *Landgraf* analysis after concluding that the statute had not expressly prescribed its reach notwithstanding an effective-date provision stating that the statute had no effect until "after the effective date").  If the Court agrees that the limitations period lacks an effective-date clause, *Alitzer*'s and *Ward's* decisions to proceed to the second step of *Landgraf* are controlling.

Both *Latham* and *Lytes* concern whether the Americans with Disabilities Act Amendments Act ("ADAAA")—which expands the definition of who is "disabled"—applies retroactively to a plaintiff who would not have been considered "disabled" before the ADAAA's effective date. The *Latham* court cited the effective-date provision as evidence that the statute did not apply retroactively, but nevertheless proceeded to analyze the statute's effect under *Landgraf*'s step two. *See* 489 Fed. App'x at 245. The *Lytes* court concluded that the effective-date provision was dispositive, but conceded that there could be "alternative and time-neutral explanation[s] of the delay" imposed by other effective-date provisions. *Lytes*, 572 F.3d at 941. In connection with the "substantive" provision of the ADAAA, however, it could "imagine no reason for the Congress to have delayed the effective date other than to give fair warning of the Amendments to affected parties and to protect settled expectations." *Lytes*, 572 F.3d at 940.[7]

The same is true with respect to *Creek Coal*. The Sixth Circuit considered whether it could apply retroactively the Black Lung Benefits Act—which expanded the definition of "miners"—to the plaintiff, who would not have been a "miner" before the Act's effective date. The court first explained how the

---

[7] Notably, the court still proceeded to the next step and considered whether applying the statute would have an impermissible retroactive effect. *Lytes*, 572 F.3d at 940.

effective-date provision worked in connection with this substantive provision to expand the definition of those "miners" entitled to benefits.  *Creek Coal*, 134 F.3d at 738.  Only then did it hold that Congress clearly prescribed the temporal reach of "the statutory amendment at issue" by imposing an effective date.  *Id*.

In contrast, applying the extended limitations period to Ms. Cruz's claims would not increase the scope of the Appellees' liability—Ms. Cruz was protected by the TVPA prior to the Reauthorization Act.[8]  And—even if Title IV's effective-date provision applies Ms. Cruz's claims—the required administrative actions certainly provide an "alternative" explanation for the delayed effective date.  *See supra* p. 7 n.4.  At most, these cases would bar Ms. Cruz's claims that expired *before* Title IV's effective date (although none had).

* * *

Title IV's effective-date provision thus does not dictate the temporal reach of the TVPA's extended limitations period.  The proper question is therefore whether applying the extended limitations period would have an impermissible retroactive effect.  Such an effect would occur only if Ms. Cruz's TVPA claims had expired when the extended limitations period took effect.

---

[8]  The Appellees do not suggest any reliance on the four-year limitations period— that they would not have enslaved Ms. Cruz had they known that the statute of limitations would be extended from four years to ten.  *See* Cruz Br. 20-21 (collecting cases).

14

### C. Ms. Cruz's Claims Were Alive No Matter When The Extended Limitations Period Took Effect

The Appellees do not dispute that Ms. Cruz's claims, arising within four years before the limitations period went into effect, were alive when that extended period took effect. Appellees Br. 14-15. Because the Appellees never explain how applying an extended limitations period to unexpired claims would be impermissibly retroactive, the Appellees essentially concede that, if the extension applies to Ms. Cruz's claims, the District Court erred in at least dismissing these claims on timeliness grounds.

Nevertheless, the Appellees argue that claims arising more than four years before the extended limitations period went into effect were not alive, including claims that the Appellees knowingly recruited, harbored, transported, or obtained Ms. Cruz for labor or services in violation of Section 1590 of the TVPA, 18 U.S.C. § 1590. Appellees Br. 15. They are wrong.

First, the Appellees do not raise any similar argument with respect to Ms. Cruz's forced labor claims under Section 1589, 18 U.S.C. § 1589—essentially conceding that they are timely.

Second, the Section 1590 violations constituted a "continuing violation" of the TVPA that caused the limitations period to begin anew with each violation, ending only when Ms. Cruz escaped. Cruz Br. 29. The Appellees' only response—that these violations "were obviously one-time events" (Appellees Br.

15 n.16)—cannot be squared with Ms. Cruz's allegations that the Appellees continuously "harbored" and "transported" her to "obtain" her labor during the entire time she was enslaved. Each of these actions—seizing her passport and refusing to return it after repeated requests; transporting her between their homes; permitting her visa to expire; continually threatening her with deportation; and continuously isolating her from the outside world—ran afoul of the TVPA. *See* Cruz Br. 29-30; J.A. 12-14, 20-21. The clock on all of these claims started on the day of the last violation—January 17, 2008—which means that these claims too were still alive when Congress extended the limitations period.[9]

## II. The Statute Of Limitations For Ms. Cruz's FLSA Claims Tolled Until She Received Actual Notice Of Her Rights

Ms. Cruz's FLSA claims are timely because the Appellees did not post notices regarding her FLSA rights as required by 29 C.F.R. § 516.4, thereby tolling the FLSA's three-year limitations period until she received actual notice of her right to a minimum wage. This Court adopted this actual-notice rule in the context of the Age Discrimination in Employment Act ("ADEA"), *Vance v. Whirlpool Corp.*, 716 F.2d 1010 (4th Cir. 1983), and district courts have since adopted this standard for FLSA claims. *See, e.g., Cortez v. Medina's Landscaping, Inc.*, No.

---

[9] In the alternative, the District Court also erred when it held that Ms. Cruz had not pled facts sufficient to warrant discovery on whether her TVPA claims equitably tolled until she escaped. *See infra* pp. 22-27.

00-cv-6320, 2002 WL 31175471, at *6 (N.D. Ill. Sept. 30, 2002); *see also* Cruz Br. 37-38 (collecting additional cases). Applying the *Vance* standard to the FLSA makes good sense, as the FLSA's and ADEA's notice requirements presuppose that employees "cannot be reasonably expected to learn about the rights described in the notice[s] . . . on their own" and neither statute provides penalties for employers that fail to post required notices. *Cortez*, 2002 WL 31175471, at *5. The District Court's failure to apply *Vance*—and decision instead to apply the generic "extraordinary circumstances" tolling standard (J.A. 112-13)—was an error of law, and therefore requires reversal, regardless of whether the District Court is reviewed *de novo* or for an abuse of discretion. *See E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 411 (4th Cir. 2005).

The Appellees make no attempt to distinguish the ADEA from the FLSA, or explain why *Vance*'s actual-notice rule should not also protect FLSA plaintiffs. They proffer instead a bizarre and offensive argument: the Appellees had no obligation to notify Ms. Cruz of her rights because she was unlikely to understand the FLSA notice, which is not available in Ms. Cruz's native language. *See* Appellees Br. 23-27 n.10. This is incorrect factually. Ms. Cruz has never alleged that she cannot understand *any* English, only that her English skills were limited. J.A. 9-10, 29. And even a limited English speaker could understand the FLSA poster's core message: "$7.25 per hour." *See* Dep't of Labor, Wage & Hour Div.,

Fair Labor Standards Act Minimum Wage Poster, http://www.dol.gov/ whd/regs/compliance/posters/minwagebwp.pdf ("FLSA Poster"). More importantly, this argument is perverse, as it would afford *fewer* protections to non-English speakers—making it *easier* for unscrupulous employers to violate the FLSA. *Cf. Quicken Loans Inc. v. Alig*, 737 F.3d 960, 965 (4th Cir. 2013) ("[T]o conclude otherwise would lead to an absurd result."). Indeed, the ridiculousness of this argument is underscored by the fact that the Appellees do not cite a single case embracing this flaccid understanding of the FLSA.

Rather than address *Vance*, the Appellees proffer a page-long string cite of district court cases that have declined to toll FLSA claims based on an actual-notice rule. *See* Appellees Br. 25-26. But none of those authorities supports what the District Court did here: dismiss Ms. Cruz's claims based solely on the pleadings.

First, none of these cases rejected a plaintiff's equitable-tolling argument on a motion to dismiss—they arose either on motions for summary judgment or on another procedural posture that permitted the plaintiff to produce evidence. *See, e.g.*, *Campanelli v. Hershey Co.*, No. 08-cv-1862, 2010 WL 3219501, at *1 (N.D. Cal. Aug. 13, 2010) (motion for class certification); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 80-81, 88 (E.D.N.Y. 2012) (default judgment after discovery closed); *Vidiedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246

F. Supp. 2d 886, 904 (S.D. Ohio 2003) (granting summary judgment in light of evidence that the employer posted the required notices).[10]   Indeed, *Vance* itself demonstrates the intensely factual nature of the "actual notice" inquiry, as it affirmed the district court's decision to send that issue to a jury.  *See Vance*, 716 F.2d at 1013.  It would thus make little sense to dismiss Ms. Cruz's FLSA claims without first affording her the opportunity to take discovery or submit evidence showing when she received actual notice of her FLSA rights, or at the very least to amend her complaint.  If it were otherwise, there would be little left of the general rule that "a plaintiff is not required to anticipate" a defendant's statute of limitations defense.  *See Guy v. E.I. DuPont de Nemours & Co.*, 792 F.2d 457, 460 (4th Cir. 1986).

Second, and contrary to several of the Appellees' non-precedential authorities, nothing in *Vance* requires a plaintiff to show more than an employer's failure to post required notices and the employee's corresponding lack of actual notice of his rights.  *Compare Vance*, 716 F.2d at 1013 (analysis focusing solely on

---

[10]   *See also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 264 (S.D.N.Y. 2011) (summary judgment); *Noble v. Serco, Inc.*, No. Civ. A. 3:08-76-DCR, 2009 WL 3254143, at *1 (E.D. Ky. Oct. 7, 2009) (motion to toll statute of limitations); *Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168, 1171 (S.D. Fla. 2007) (summary judgment); *Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-CV-0049-DFHTAB, 2006 WL 2850020, at *1 (S.D. Ind. Sept. 29, 2006) (summary judgment and class certification).

plaintiff's actual notice), *with Gunawan*, 897 F. Supp. 2d at 88 (failure to post notices "without more, does not suffice").

Even if this Circuit required Ms. Cruz to show "more"—it does not—she certainly could do so based on the facts pled in the Amended Complaint. Unlike the employees in the cases on which the Appellees rely, Ms. Cruz's nearly six years of enslavement limited her interactions with the outside world, ensuring that she would not learn of her rights. And the Appellees' threats to have Ms. Cruz hunted down and deported eliminated any motivation she may have had to learn about her rights, as any effort to enforce them would have alerted the Appellees to her whereabouts.

Third, the Appellees make much of *Archer v. Sullivan County*, 129 F.3d 1263 (Table), 1997 WL 720406 (6th Cir. 1997), but that decision suffers from the same flaws outlined above. Moreover, *Archer* does not even appear to reject the actual-notice rule. It instead analyzed the contents of the FLSA notice that purportedly would have informed the plaintiffs of their rights, and concluded that none of those particular rights even appeared on the FLSA notice. *Id.* at *4 ("The notice does not mention the distinction between employees hired before April 15, 1986, and those hired on or after that date. Neither does it mention the 480 hour rule or the limitations period for filing suit."). It was in *that* context that the Sixth Circuit was "not persuaded that the [defendant's] failure to post such a notice

20

justifie[d] invocation of the tolling doctrine." *Id.* This stands in stark contrast to Ms. Cruz's minimum-wage FLSA claim, as the minimum wage is the most prominent aspect of the FLSA poster. *See* FLSA Poster.

Applying *Vance*'s actual-notice rule to the FLSA would not, as the Appellees argue, overwhelm "concerns over finality" or create a "limitless expansion of the tolling doctrine." Appellees Br. 28. There is a clear limit to the actual-notice rule: if a plaintiff has actual notice of his or her rights, then the employers' failure to post the required notices is utterly irrelevant. Moreover, employers are not helpless to prevent "indefinite tolling"—they need only post a required notice and are not penalized if a plaintiff fails to see it. *See English v. Pabst Brewing Co.*, 828 F.2d 1047, 1050 (4th Cir. 1987).

Setting aside the timeliness issue, Ms. Cruz has pled a plausible willful violation of the FLSA. The Appellees argue in a footnote that Ms. Cruz's allegations of willfulness are mere "legal conclusions." *See* Appellees Br. 17 n.7. The Appellees have waived this argument. *See Wahi*, 562 F.3d at 607. In any event, Ms. Cruz's factual allegations are more than sufficient. Willfulness requires a showing that the employer "knew or showed reckless disregard" for whether its actions violated the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Ms. Cruz's complaint contains numerous allegations to this effect: (1) the Appellees paid her less than $1.00 per hour for nearly six years; (2) they

forced her to work 17 to 18 hours every day; and (3) they forced her to fill out time sheets to reflect that she worked less time than she actually had worked. J.A. 5, 15, 17. These allegations are certainly sufficient to defeat a motion to dismiss. *Cf. Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (affirming district court's willfulness finding based solely on plaintiff's testimony "that they regularly worked off-the-clock with the knowledge of Food Lion officials").

## III. Whether The Appellees' Conduct Constitutes "Extraordinary Circumstances" To Equitably Toll Ms. Cruz's TVPA And FLSA Claims Is A Factual Question Requiring Discovery

Even if this Court disagrees that the TVPA claims are timely under the ten-year statute of limitations, or that Ms. Cruz's FLSA claims tolled under *Vance*'s actual-notice rule, these claims are well pled under standard equitable tolling principles. Dismissal prior to discovery was erroneous.

Equitable tolling is appropriate where the defendant's "wrongful conduct . . . prevented [the plaintiff] from timely asserting her claim" or other "extraordinary circumstances beyond [the plaintiff's] control made it impossible for her to comply with the statutory time limit." *Kuusk v. Holder*, 732 F.3d 302, 304 (4th Cir. 2013). Ms. Cruz's allegations about her post-escape experience are sufficient to raise a plausible equitable tolling defense. After breaking free from the Appellees' custody, Ms. Cruz remained terrified that the Appellees would make good on threats to hunt her down, arrest her, and have her deported. J.A. 6, 14. As a result,

and like many victims of human trafficking, Ms. Cruz avoided detection, in part, by not pursuing her rights in court, choosing instead to live in the shadows of society.  J.A. 6; Heather J. Clawson, et al., U.S. Dep't of Health & Human Servs., *Treating the Hidden Wounds: Trauma Treatment & Mental Healthy Recovery for Victims of Human Trafficking* 3 (2008) (victims' isolation "limit[s] their ability to access information about rights, services and options").

1.    In response, the Appellees seek to insulate the District Court's erroneous decision to dismiss Ms. Cruz's complaint, arguing that this Court must review it only for an abuse of discretion.  That is incorrect.  With respect to Ms. Cruz's TVPA claims, the District Court did not address Ms. Cruz's tolling argument.  *Compare* J.A. 71-75 (Ms. Cruz's District Court brief), *with* J.A. 109-111 (District Court's analysis of the TVPA claims).  There is thus no decision to which this Court could defer.

This Court also should not defer to the District Court's ruling with respect to FLSA equitable tolling.  Although this Court has reviewed equitable tolling rulings on motions to dismiss for abuses of discretion, such a deferential review is appropriate only where the record clearly shows that the plaintiff could never prove the "wrongful conduct" or "extraordinary circumstances" to warrant equitable tolling.  *See Guy*, 792 F.2d at 460 (plaintiff need not anticipate statute of limitations defense).  Indeed, the factual records in both cases the Appellees cite

23

for their standard-of-review argument were far more developed than in Ms. Cruz's case. In *Angles v. Dollar Tree Store*, 494 F. App'x 326 (4th Cir. 2012), the district court rejected the plaintiffs' tolling argument with the benefit of a record developed in parallel litigation. *Id.* at 332. And *Rouse v. Lee*, 339 F. 3d 238 (4th Cir. 2003), was a state habeas case that necessarily included a lengthy factual record and, in fact, did not even involve a factual dispute regarding the circumstances underlying the habeas petitioner's claim for tolling. *Id.* at 248-51.

The record here, in contrast, is barren. Ms. Cruz's tolling claims are grounded primarily in the effect that the Appellees' threats had on her after her escape. Because such information was not relevant to her affirmative causes of action, she did not burden her complaint with extraneous materials, in keeping with the spirit of Rule 8. *See* Fed. R. Civ. P. 8(a)(2) (requesting "a short and plain statement of the claim showing that the pleader is entitled to relief"). Ms. Cruz should not be punished for her brevity. Rather, the District Court should have recognized that "equitable tolling often depends on matters outside the pleadings" and "allow[ed] her to proceed to discovery." *See Doe v. Siddig*, 810 F. Supp. 2d 127, 133 (D.D.C. 2011) (internal quotation marks omitted). By relying solely on Ms. Cruz's complaint, the District Court shed its comparative institutional advantage over this Court, leaving no reason to defer to the District Court's conclusion. *See Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 631-32 (4th Cir.

2010) ("Both this Court and the district court conduct these respective reviews based solely on the existing administrative record . . . . Thus, we are equally situated to . . . examine the administrative record and to apply the facts to the proper legal standard.").

2.      The Appellees' arguments on the merits also fail.  They open with a mischaracterization, arguing that Ms. Cruz's sole ground for "extraordinary circumstances [is] . . . [that] she was a victim of human trafficking."  Appellees Br. 19.  That is wrong.  This Court should reverse the dismissal of Ms. Cruz's claims because she alleged that the Appellees' wrongful conduct deterred her from filing suit after she escaped and forced her to live in the shadows of society because she feared what might happen if the Appellees ever found her.  *See* J.A. 6, 22-23; Cruz Br. 31-32, 42-43.

Similar experiences by other trafficking victims lend support to the plausibility of Ms. Cruz's alleged fear.  Congress recognized when it first passed the TVPA that trafficking victims "often find it difficult or impossible to report the crimes committed against them" "because they often fear retribution and forcible removal to countries in which they will face retribution or other hardship." Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1466, § 102(b)(20).  Indeed, these fears do not automatically abate after a victim comes forward.  As Senator Rubio's *amicus* brief explains, trafficking

25

victims who testified before Congress in connection with the TVPA testified in disguise out of "fear that [their] captors would recognize [them]," facing "great personal risk to themselves . . . and their families." Rubio Br. 26. Of course, not all trafficking victims will have had a similar experience, and those individuals may not benefit from tolling. But these documented experiences surely are not irrelevant to the plausibility of Ms. Cruz's allegations, as the Appellees contend. *See* Appellees Br. 21-22.

The Appellees next argue that Ms. Cruz could not possibly warrant tolling past the date of her escape because any "isolation necessarily ended when she 'escaped.'" Appellees Br. 22. This argument misses the point. Indeed, it willfully ignores Ms. Cruz's core tolling allegations: her fear of being located by the Appellees caused her to live in the shadows of society and refrain from asserting any rights she might have had. *See* J.A. 6, 22-23; Cruz Br. 31-32, 42-43.

With no answer to Ms. Cruz's core factual allegation, the Appellees quibble with her authorities, to no effect. Ms. Cruz's opening brief did not misrepresent *Doe*, which stands for the basic proposition that equitable tolling generally requires discovery. 810 F. Supp. 2d at 137. Nor did Ms. Cruz over read *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 117-20 (D.D.C. 2012), which suggests that courts may appropriately toll the claims of trafficking victims until the date that they are comfortable enough to work with law enforcement.

26

The Appellees and the District Court both commit the same mistake—they confuse a plaintiff's pleading burden at the motion to dismiss stage with a plaintiff's burden of production at summary judgment. It is only after discovery that the District Court could be in a position to conclude whether Ms. Cruz has made a sufficient showing to possibly prove to a jury that her TVPA and FLSA claims warrant equitable tolling. *See P. Stoltz Family P'ship L.P. v. Daum*, 355 F.3d 92, 98 (2d Cir. 2004) ("While it should take very little discovery to investigate the viability of this allegation, it was improperly dismissed at this early stage of litigation."). Until then, the record simply cannot justify dismissal based on the Appellees' statute of limitations defense. *See FDIC v. Cocke*, 7 F.3d 396, 402-03 (4th Cir. 1993) (reversing district court's denial of equitable tolling and remanding for factual development of the plaintiff's tolling argument).

## IV. Ms. Cruz's Allegations In Support Of Equitably Tolling Her Breach Of Contract Claims Are Well Pled

Ms. Maypa breached three contracts with Ms. Cruz by enslaving her and forcing her to work for a pittance. The Appellees do not contest the adequacy of Ms. Cruz's allegations, arguing only that her claims had expired under Virginia's five-year statute of limitations. Appellees Br. 31. They are wrong.

Virginia law tolls statutes of limitations when a defendant "obstruct[s] . . . the filing of an action" using "direct or indirect means," and effectively "debar[s] or deter[s] the plaintiff from his action." *See* Va. Code § 8.01-229(D)(ii); *Newman*

*v. Walker*, 618 S.E.2d 336, 340 (Va. 2005) (internal quotation marks omitted).  The Appellees' mistreatment of Ms. Cruz certainly meets this standard.   Until her escape on January 17, 2008, the Appellees prevented her from filing suit by controlling her movements.  J.A. 12, 14, 19-21; *see also Deressa v. Gobena*, No. 05-C-1334 (JCC), 2006 WL 335629, at *4 (E.D. Va. Feb. 13, 2006) (tolling until escape); *Kiwanuka*, 844 F. Supp. 2d at 120 (tolling until escape under similar District of Columbia law).  Until at least July 16, 2008 (five years before Ms. Cruz filed suit), the Appellees "indirectly" "obstructed" and "deterred" Ms. Cruz from filing suit, as Ms. Cruz remained terrified that the Appellees would make good on promises to have her arrested and deported if she ever escaped.  J.A. 14.  Indeed, the plausibility of Ms. Cruz's post-escape trauma is supported by the experiences of other trafficking victims who, years after escape, lived in fear that their "captors would recognize [them]," placing them and their families "in danger."  *See* Rubio Br. 26.

In response, the Appellees concede that Ms. Cruz's contract claims did not accrue until she escaped.  Appellees Br. 32.  They also have no answer for Ms. Cruz's sound argument that the Appellees' threats "debar[red] or deter[red]" Ms. Cruz from filing suit for at least six months after she escaped.  *Compare* Cruz Br. 47-48, *with* Appellees Br. 30-34.  Indeed, Appellees do not even cite or explain *Newman*'s "debar or deter" test.

They instead argue only that neither *Kiwanuka* nor *Deressa* support tolling after escape, but rather stand for the contrary proposition that Ms. Cruz's contract claims "would have commenced running no later than the date of her 'escape.'" Appellees Br. 34. This argument is wrong and, in the context of Ms. Cruz's opening brief, a *non sequitur*, as Ms. Cruz did not rely on either case to support tolling her contract claims after escape. *See* Cruz Br. 47-48. Moreover, neither case rejects the possibility that the statute of limitations tolled after escape. Those courts had no occasion to opine on that topic because the plaintiffs had no need for additional tolling. *See Deressa*, 2006 WL 335629, at \*4; *Kiwanuka*, 844 F. Supp. 2d at 120.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's dismissal of Ms. Cruz's complaint.

Dated:  February 18, 2014          /s/ Joseph D. West

Dana Sussman                      Joseph D. West
SAFE HORIZON                      W. Jeremy Robison
50 Court Street, 8th Floor        Christopher B. Leach
Brooklyn, N.Y. 11201              Marisa C. Maleck
(718) 943-8631                    Kathryn E. Hoover
                                  GIBSON, DUNN & CRUTCHER LLP
                                  1050 Connecticut Avenue, N.W.
                                  Washington, D.C. 20036
                                  (202) 955-8500

                                  *Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1.     This brief complies with Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,957 words, as determined by the word-count function for Microsoft Word 2010, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionality spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated:  February 18, 2014               /s/ Joseph D. West
                                       Joseph D. West

## <u>ADDENDUM</u>

Pub. L. No. 110-457, § 407, *codified at* 22 U.S.C. 2370c note:

**SEC. 407. EFFECTIVE DATE; APPLICABILITY.**

This title, and the amendments made by this title, shall take effect 180 days after the date of the enactment of this Act.

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2014, an electronic copy of the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system and by serving a true and correct copy of the foregoing to the address listed below:

Timothy Battle
524 King Street
Alexandria, VA 22320-9631


/s/ Joseph D. West
Joseph D. West